Domenic **SERAPIGLIA,** Mayor of City of Clairton, in his official capacity and (on behalf of Dean Grilli, Denise Julian, Wilma Reaves, Victor Sporio, and Ron Wanless), Appointed Board of The Redevelopment Authority of the City of Clairton,

v.

CITY OF CLAIRTON and City Council Members Adamson, Meade, and Virgona of City of Clairton, in their Official Capacities, Ralph Imbrogno, in his Official Capacity, City Manager and Vincent Restagno, Municipal Solicitor, Appellants.

Commonwealth Court of Pennsylvania.

Argued Oct. 8, 2002.

Decided Oct. 31, 2002.

---

John W. Gibson, Pittsburgh, for appellants.

Brian P. Gabriel, Pittsburgh, for appellees.

BEFORE: SMITH–RIBNER, Judge, LEADBETTER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

The City of Clairton, certain members of City Council, the City Manager and the Municipal Solicitor (hereafter collectively referred to as the City)[1] appeal from separate orders of the Court of Common Pleas of Allegheny County (trial court), concluding that the certificate of dissolution of the Redevelopment Authority of the City of Clairton (the Authority) was invalid and that Dominic Serapiglia, Mayor of the City of Clairton, possessed sole appointing power without the necessity of approval by City Council. The latter order further dismissed the City's preliminary objections with prejudice. We affirm.

This matter arises out of a dispute over the authority of Mayor Serapiglia to appoint members to the Authority. Upon questioning by Mayor Serapiglia, the Municipal Solicitor repeatedly advised him

that he was without power to make such appointments. At a regular meeting of the City Council in August of 2001, City Council reiterated to Mayor Serapiglia by a vote of three to two that he lacked this specific appointment power.[2] Nevertheless, Mayor Serapiglia sought advice from outside counsel, who informed him that he did, in fact, possess the power of appointment. Thereafter, by letter dated September 7, 2001, Mayor Serapiglia advised City Council that he was appointing five individuals to the Authority.[3] In his letter, Mayor Serapiglia cited to Section 5 of the Urban Redevelopment Law[4] and our Supreme Court's decision in *Herriman v. Carducci*, 475 Pa. 359, 380 A.2d 761 (1977)[5] as the basis for his action.

By letter dated September 10, 2001, the Municipal Solicitor responded by indicating that Mayor Serapiglia lacked appointment power as the Authority no longer existed. More specifically, the Municipal Solicitor alleged that the Authority had been dissolved by "Certificate on December 18, 1973." (R.R. at 19a). On September 21, 2001, Mayor Serapiglia filed an action for declaratory relief and complaint in quo warranto.[6] Mayor Serapiglia sought a declaratory judgment regarding

---

1. The City Council members include George Adamson, Thomas Meade and Dominic Virgona. The City Manager is Ralph Imbrogno and the Municipal Solicitor is Vincent Restagno.

2. At this hearing, the Municipal Solicitor claimed that said power rested with the members of City Council under the Home Rule Charter.

3. These five individuals included Dean Grilli, Denise Julian, Wilma Reaves, Victor Sporio and Ron Wanless.

4. Act of May 24, 1945, P.L. 991, *as amended*, 35 P.S. § 1705. This Section provides that "the mayor or board of county commissioners ... shall appoint, as members of the Authori-

ty, five citizens who shall be residents of the city or county in which the Authority is to operate."

5. In *Herriman*, the Court did hold that a mayor possesses sole appointment power regarding a redevelopment authority and need not seek the approval of city council.

6. This action and complaint was also filed on behalf of Mayor Serapiglia's appointees, i.e., Dean Grilli, Denise Julian, Wilma Reaves, Victor Sporio and Ron Wanless. For purposes of brevity, we will hereafter refer to Mayor Serapiglia and his appointees simply as Mayor Serapiglia.

his right to appoint members to the Authority and quo warranto relief providing that the five individuals he appointed be properly sworn in and thereafter convene meetings and perform necessary functions. Mayor Serapiglia attached to his complaint the Authority's original certification from the Department of State (Department) in 1950 and a certification from the Department dated September 13, 2001, indicating that the Authority is "duly incorporated ... and remains a subsisting corporation so far as the records of this office show." (R.R. at 14a).

The City responded by filing preliminary objections on October 16, 2001, claiming that Mayor Serapiglia had no standing or right to utilize the services of outside legal counsel under the City's Home Rule Charter. The City also alleged that the Authority had been dissolved in December of 1973. The City attached a certificate to its preliminary objections noting the Authority's request to terminate dated December 18, 1973, and the City Council's granting of such request effective December 29, 1973. Additionally, the City noted a February, 1999, amendment to a prior ordinance regarding a Vacant Property Review Committee (Committee), whereby any reference to the "Redevelopment Authority of Allegheny County" was changed to the "Redevelopment Authority of the City of Clairton." (R.R. at 36a). This amendment also basically enabled City Council to fill three of the five positions on the Committee, with the remaining positions to be filled by the Authority and the Mayor. This amendment was signed by the City Manager at the time, as well as Mayor Serapiglia.

Citing a City Council meeting agenda from May of 1998, the City contended that the purpose of this amendment was "to disband the old Redevelopment Authority Board and appoint Council to the new Redevelopment Authority Board." (R.R. at 38a). The City further noted another amendment in February of 2000 to the same section of the ordinance, which reiterated the changed reference to the Authority and enabled the Authority to fill five positions, the City Council to fill another and the last one to be filled by the City Manager. Alternatively, the City contended in its preliminary objections that Mayor Serapiglia may not unilaterally remove all existing members of the Authority and replace them with his own nominees. The City also contended that the question of appointment of members of various boards and commissions was a political matter not subject to the jurisdiction of the courts.[7]

On this same day, Mayor Serapiglia filed a petition for preliminary and permanent injunctions, declaratory and quo warranto relief seeking relief in the form of enjoining the City "from preventing or refusing to recognize the ability and right of the Mayor ... to appoint members to the [Authority] without the consent or approval of City Council, the City Manager or legal counsel...."[8] (R.R. at 62a). The trial court thereafter scheduled argument regarding the petition for preliminary and permanent injunctions.[9] Mayor Serapiglia

---

7. The trial court scheduled a hearing on the preliminary objections for January 15, 2002.

8. In this petition, Mayor Serapiglia also reiterated his request for declaratory and quo warranto relief as set forth in his complaint.

9. The trial court issued an order scheduling a hearing for November 7, 2001. In this order, Mayor Serapiglia was directed to file a brief by October 23, 2001, with the City's brief due by October 31, 2001. In addition, this order directed counsel for the parties to meet with "the Motions Judge" on November 5, 2001, for a status/settlement conference. (R.R. at 57a).

did not file his brief until October 30, 2001, followed by the City's responsive brief filed on November 5, 2001, the date of the status/settlement conference. The trial court proceeded with a hearing on November 7, 2001. Mayor Serapiglia testified at the hearing on his own behalf. The City merely presented the testimony of Michael Steven Foreman, a local government policy specialist with the Department of Community and Economic Development. Mr. Foreman was called to testify regarding the limited issue of the existence and/or dissolution of the Authority in 1973. However, Mr. Foreman indicated that he had no knowledge of whether a certificate of dissolution was filed or not filed with the Department. Mr. Foreman did acknowledge the September 13, 2001, certification from the Department as to the existence of the Authority.

At the conclusion of the hearing, the trial court indicated its findings that the Authority was not properly dissolved and continues to exist, that the December, 1973, resolution to dissolve was "of no effect" and that Mayor Serapiglia had the sole power to appoint without approval of City Council. The trial court also stayed the argument on the preliminary objections scheduled for January 15, 2002.[10] At a scheduled meeting on November 13, 2001, City Council passed two new ordinances dissolving the Authority and prohibiting the Committee and/or the Authority from exercising any powers of eminent domain.[11] Mayor Serapiglia refused to sign the ordinances, citing ongoing litigation. The very next day the trial court

issued a formal order declaring the Authority to be a legal entity and declaring Mayor Serapiglia to possess the sole appointing power of Authority members. In this order, the trial court also indicated that any efforts to dissolve the Authority must be undertaken by the Authority itself. Additionally, the trial court dismissed the City's preliminary objections with prejudice. The City immediately filed a notice of appeal with the trial court. The City later filed a concise statement of matters complained of on appeal.

In the meantime, Mayor Serapiglia filed a petition in contempt alleging that certain members of City Council and the Municipal Solicitor had defied the order of the trial court and attempted to usurp the Authority's powers and dissolve the same by illegal ordinances.[12] The trial court scheduled a hearing on the contempt petition for January 3, 2002. Prior to this hearing, in December of 2001, the City had attempted to re-file the 1973 certificate of dissolution with the Department. Following argument on the petition, the trial court issued an order finding this re-filed certificate to be invalid and striking the same. The order also directed that the Authority be restored to its rightful status as a valid entity of record. Further, the trial court specifically directed the City, its elected officials, the City Manager and the Municipal Solicitor to not interfere with the "functioning, authority, and lawful administration of the [Authority]." (R.R. at 159a).

10. In fact, the trial court indicated that "those preliminary objections will not be argued." (R.R. at 217a).

11. The latter ordinance also changed the name of the Committee to the Vacant Property Review and Economic Development Authority.

12. The City filed an application for a writ of prohibition asserting that the trial court lacked jurisdiction over the contempt petition while an action was pending. However, by order dated December 31, 2001, this Court denied the application. This Court also denied an amended application for writ of prohibition by order dated January 30, 2002.

Subsequently, on January 30, 2002, the trial court issued an opinion in support of its orders. The trial court noted that the 1973 certificate of dissolution was apparently never forwarded to the Department and that, as of September 13, 2001, the Authority was duly incorporated under the laws of this Commonwealth. The trial court reiterated its finding that Mayor Serapiglia had sole appointing power with respect to the members of the Authority. The trial court also noted that, despite its November 7, 2001, oral decision, the Municipal Solicitor and City Council attempted to dissolve the Authority by ordinance. The trial court indicated that its January 3, 2002, order was necessary to return the parties to where they were as of its earlier November 14, 2001, order.

On appeal to this Court,[13] the City argues that the trial court abused its discretion and committed an error of law in ruling that the Authority had not been dissolved and that Mayor Serapiglia could unilaterally nominate and install members without approval of City Council. We disagree.

■ The City's argument actually consists of four separate parts. First, the City argues that certain substantive and procedural defects in Mayor Serapiglia's action and complaint should have precluded the trial court from granting relief of any kind. More specifically, the City argues that Mayor Serapiglia's action and complaint sounded in law, not equity, that Mayor Serapiglia request for declaratory relief could only progress through the procedural rules governing actions at law and that quo warranto relief was not available under the facts of this case. We disagree.

Admittedly, we have previously indicated that actions in quo warranto are actions at law. *See Cabell v. City of Hazleton,* 96 Pa.Cmwlth. 129, 506 A.2d 1001 (1986). Nevertheless, our Rules of Civil Procedure provide that "[i]n any action at law or in equity, a party may include in the claim for relief a prayer for declaratory relief and the practice and procedure shall follow, as nearly as may be, the rules governing that action." Pa. R.C.P. No. 1602. Regarding actions in quo warranto, the Rules merely provide that the procedure in such actions "shall be in accordance with the rules relating to a civil action." Pa. R.C.P. No. 1111. Nevertheless, upon our review of the evidence of record, we fail to see any inappropriate deviation from these "rules" by Mayor Serapiglia. Nor does the City specify how Mayor Serapiglia's request for declaratory relief failed to progress through the procedural rules governing actions at law.

Regarding the action in quo warranto, such actions are generally instituted by the Attorney General or by the local district attorney. *See* Pa. R.C.P. No. 1112; *In re One Hundred or More Qualified Electors of the Municipality of Clairton,* 546 Pa. 126, 683 A.2d 283 (1996). Nevertheless, such an action may also be brought "in the name of a party who has an interest distinct from that of the general public." Pa. R.C.P. No. 1112(c). In this case, the City seems to neglect the fact that Mayor Serapiglia's action in quo warranto was also brought on behalf of his appointees to the Authority. We believe that Mayor Serapiglia and his appointees fit the description of a party having "an interest distinct from

---

13. The rulings below concerned only questions of law. Thus, our scope of review is plenary. *See Wojdak v. Greater Philadelphia Cablevision,* 550 Pa. 474, 707 A.2d 214 (1998). As this matter involves only questions of law, our standard of review is limited to determining whether the trial court committed an error of law. *See Stone & Edwards Insurance Agency, Inc. v. Department of Insurance,* 538 Pa. 276, 648 A.2d 304 (1994).

that of the general public." *Id.*[14]

Next, the City argues that the trial court erred by failing to consider its preliminary objections. We see no merit to this argument by the City. Contrary to the City's assertions, the trial court did consider the City's preliminary objections, dismissing the same with prejudice in its November 14, 2001, order. We note that the bulk of the City's preliminary objections focused upon its allegations that the Authority no longer existed and that Mayor Serapiglia had no unilateral authority to appoint members. These same issues were addressed before the trial court in the hearing held on November 7, 2001,[15] relating to Mayor Serapiglia's petition for preliminary and permanent injunctions.

■ Next, the City argues that the trial court erred as a matter of law in concluding that the Authority was still in existence. Again, we disagree.

Section 4(a) of the Urban Redevelopment Law empowers municipalities to create "separate and distinct bodies corporate and politic" to be known as the "Redevelopment Authority" of the municipalities. 35 P.S. § 1704(a). In order to create the same, the governing body of the municipality must "find and declare by proper ordinance or resolution that there is a need for an Authority to function within the territorial limits of said city or county, as the case may be." 35 Pa.C.S. § 1704(b). Additionally, the governing body must "cause a certified copy of such ordinance or resolution to be filed with the Department of State," after which the Department "shall

issue a certificate of incorporation." 35 P.S. § 1704(c).

Thereafter, "[i]n any suit, action or proceeding involving or relating to the validity or enforcement of any contract or act of an Authority, a copy of the certificate of incorporation duly certified ... shall be admissible in evidence and shall be conclusive proof of the legal establishment of the Authority." 35 P.S. § 1704(d). Regarding members of the same, we reiterate that Section 5 of the Urban Redevelopment Law specifically empowers "the mayor or board of county commissioners" to appoint said members.

With respect to dissolution of municipal authorities, Section 4.1 of the Urban Redevelopment Law[16] provides that the governing body may "find and declare by proper resolution ... that there is no longer any need for the authority created for such city to function." 35 P.S. § 1704.1. This Section further provides that the governing body shall thereafter "issue a certificate reciting the adoption of such resolution, and shall cause such certificate to be filed with the Department of State...." *Id.* Only upon such filing shall the authority cease to function. Similar to certificates of incorporation, these certificates of dissolution "shall be admissible in any suit, action or proceeding and shall be conclusive proof that the authority has ceased to be in existence." *Id.*

In this case, there is no dispute that the Authority was duly incorporated as of July 14, 1950. A copy of this certificate of incorporation was attached to Mayor Serapiglia's original action for declaratory re-

---

14. Moreover, we note, as did Mayor Serapiglia in his brief to this Court, that the trial court chose not to grant any equitable or quo warranto relief in this matter. Hence, we fail to see the relevance of City's argument in this regard.

15. As noted above, a hearing on the City's preliminary objections had previously been scheduled for January 15, 2002.

16. *Added by* Act of November 16, 1967, P.L. 498, *as amended,* 35 P.S. § 1704.1.

lief and complaint in quo warranto.[17] Mayor Serapiglia also attached to his original action and complaint a letter from the Department dated September 13, 2001, certifying that the Authority was "duly incorporated under the laws of the Commonwealth" and remained a "subsisting corporation so far as [its] records show.

The City's argument is premised upon a certificate attached to its preliminary objections containing a request dated December 18, 1973, by the Authority for council to terminate the Authority's existence, as well as an acceptance of such request by council dated December 28, 1973. The certificate indicated that the effective date of the Authority's termination would be December 29, 1973. Nevertheless, the record lacks any evidence that this certificate was properly filed with the Department in accordance with Section 4.1 of the Urban Redevelopment Law.

Additionally, at the November 7, 2001, hearing, Mr. Foreman, a local government policy specialist with the Department of Community and Economic Development, was called to testify regarding the limited issue of the existence and/or dissolution of the Authority. However, Mr. Foreman indicated that he had no knowledge of a certificate of dissolution being filed. Contrary to the City's assertions, the evidence of record detailed above indicates that the Authority has remained duly incorporated since 1950. Thus, we cannot say that the trial court erred as a matter of law in concluding that the Authority was still in existence.

■ Next, the City argues that the trial court erred as a matter of law in concluding that Mayor Serapiglia could unilaterally remove its members and substitute his own nominees. Once more, we disagree.

The City relies heavily on Section 15.20–2001 of its Home Rule Charter in support of its argument. This Section provides as follows:

> In addition to the Boards and Commissions established by this Charter, the Council may from time to time establish, by ordinance, various other Boards and Commissions to act in advisory capacity or to perform special functions. The members thereof shall be appointed by the Council unless otherwise specified in this Charter. Individual members of Council and the Mayor may make nominations for appointments to Boards, Commissions and Authorities.

302 Pa.Code § 15.20–2001. Nevertheless, the City's Home Rule Charter is in direct conflict with Section 5 of the Urban Redevelopment Law, which vests sole appointment power to an authority with the mayor.

Our Supreme Court has previously addressed this issue in *Herriman.*[18] In *Herriman,* the Court held that the General Assembly had specifically vested the power of appointment to redevelopment authorities with "the Mayor alone." *Herriman,* 475 Pa. at 361, 380 A.2d at 763. In so holding, the Court rejected the attempt of city council to supersede Section 5 of the Urban Redevelopment Law. The Court further rejected an argument that the city's home rule charter authorized such

---

**17.** As noted above, this certificate of incorporation constitutes "conclusive proof of the legal establishment of the Authority." 35 P.S. § 1704(d).

**18.** The Court in *Herriman* was faced with a situation wherein the city council of Williams-

port, a third-class city like Clairton in this case, attempted to supersede Section 5 of the Urban Redevelopment Law by passing an ordinance requiring its consent to the mayor's appointment of members of an authority.

action by the city council. To the contrary, the Court held that "[n]othing in the Optional Third Class City Charter Law, which gave third class cities the ability to organize and regulate their own internal affairs, empowers a city council to circumvent this statutory scheme by investing itself with powers denied to it by the Urban Redevelopment Law." *Herriman,* 475 Pa. at 365, 380 A.2d at 764.[19]

We believe that the same result applies here. Section 5 of the Urban Redevelopment Law specifically empowers the mayor to appoint members to an authority. Section 15.20–2001 of the City's Home Rule Charter is in direct conflict with this Section. However, Section 15.2–201 of the City's Home Rule Charter limits the City's powers to functions not denied by the United States or Pennsylvania Constitutions or by the General Assembly. 302 Pa.Code § 15.2–201. Furthermore, our Supreme Court's decision in *Herriman* controls the outcome here. Thus, we cannot say that the trial court erred as a matter of law in concluding that Mayor Serapiglia had unilateral appointment power.

■ Finally, we must address Mayor Serapiglia's request for counsel fees on the basis that the City's appeal to this Court was frivolous. Pursuant to Pa. R.A.P. 2744,[20] this Court has the discretion to award counsel fees and delay damages for a frivolous appeal. "An appeal is frivolous if it is devoid of merit with no likelihood of success, such as an argument running counter to well-established rules of law."

*Simmons v. Delaware County Tax Claim Bureau,* 796 A.2d 400, 405 (Pa.Cmwlth. 2002). Moreover, with respect to counsel fees, an appeal is frivolous if it lacks "any basis in law or fact." *Id.*

For the reasons that follow, we do not agree with Mayor Serapiglia's assertion that the City's appeal to this Court was frivolous. Rather, there was dispute in this case regarding the existence of the Authority and Mayor Serapiglia's appointment power. Regarding the former, the City did have signed certificates from 1973 indicating attempts by the Authority and the City at that time to dissolve the Authority. Regarding the latter, the City's Home Rule Charter did conflict with the Urban Redevelopment Law. Although we ultimately determined that the City's arguments on appeal were unpersuasive, we cannot say that said arguments were frivolous. Thus, we decline to award counsel fees to Mayor Serapiglia in this case.

Accordingly, the orders of the trial court are affirmed and Mayor Serapiglia's request for counsel fees is denied.

### ORDER

AND NOW, this 31st day of October, 2002, the orders of the Court of Common Pleas of Allegheny County are hereby affirmed.

■

19. We note that the Court reiterated these holdings in *Sortino v. Singley,* 481 Pa. 367, 392 A.2d 1337 (1978) and *City of Bethlehem v. Marcincin,* 512 Pa. 1, 515 A.2d 1320 (1986).

20. Pa. R.A.P. 2744 provides as follows:
In addition to other costs allowable by general rule or Act of Assembly, an appellate court may award as further costs damages as may be just, including
(1) a reasonable counsel fee and

(2) damages for delay at the rate of 6% per annum in addition to legal interest,
if it determines that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious. The appellate court may remand the case to the trial court to determine the amount of damages authorized by this rule.