COMMONWEALTH of Pennsylvania, DEPARTMENT OF LABOR AND INDUSTRY, BUREAU OF LABOR LAW COMPLIANCE, o/b/o Lynndon Hubler,

v.

**Wayne STUBER, individually and d/b/a/ C–Wayne Fixtures, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 20, 2002.

Decided May 2, 2003.

---

F. Cortez Bell, III, Clearfield, for appellant.

Kathryn J. McDermott, Harrisburg, for appellee.

BEFORE: COLINS, President Judge, and SMITH–RIBNER, Judge, and COHN, Judge.

OPINION BY Judge COHN.

This is an appeal by Wayne Stuber d/b/a C–Wayne Fixtures (Stuber) from an order of the Court of Common Pleas of Clearfield County that, after a non-jury trial, assessed damages in the amount of $1276.40 against Stuber for violation of The Minimum Wage Act of 1968, Act of January 17, 1968, P.L. 11, *as amended,* 43 P.S. §§ 333.101–333.115(Act).

The case began when the Department of Labor and Industry, Bureau of Labor Law Compliance (Bureau) received an assignment of wage claim from Lynndon Hubler. Stuber's company installs counters and fixtures in stores, primarily CVS pharmacies. Hubler did work for Stuber, including unloading trucks, installing cabinetry, hanging pictures, setting up stockroom shelving, setting up the pharmacy area, painting, installing carpeting and cleaning up, in connection with the installation business. (N.T. 32.) He submitted statements to Stuber indicating the number of hours worked and received pay in exchange. No taxes were withheld. With only one exception, he was not paid any overtime. After its own investigation, the Bureau determined that Hubler was owed $1276.40 for overtime wages. The Bureau lost before a district magistrate; however, on appeal to common pleas, mandatory *de*

*novo* .arbitration resulted in a ruling in favor of the Bureau and Hubler. Stuber then filed an appeal *de novo* and, after a bench trial, the court ruled that Hubler was an employee of Stuber for purposes of the minimum wage requirement of the Act and ordered judgment in favor of Hubler and the Bureau. Stuber appeals to this Court.

▇▇▇▇ On appeal, the single issue presented is whether Huber was an employee (and therefore entitled to overtime wages) or an independent contractor (and not entitled to such wages) for purposes of the Act.[1] The Honorable Frederic J. Ammerman, in an insightful opinion, held that Huber was an employee and, thus, awarded the overtime. We affirm.[2]

We note, initially, that there is no Pennsylvania authority that establishes the standard that should be used to determine whether one is an employee or an independent contractor under the Act. While both sides agree that the federal "economic reality" standard should be employed in this case of first impression, and also agree that there is a presumption that the individual is an employee, (a presumption the employer must rebut), Stuber additionally argues that the Court should look to other Pennsylvania laws, such as those dealing with unemployment compensation, or the Bureau of Employer Tax Operations cases, to examine the independent contractor/employee question. While such other laws should not be entirely discounted, we must remain cognizant that they were not enact-

---

**1.** Section 4(c) of the Act, 43 P.S. § 333.104(c), pertinently states:

Employes shall be paid for overtime not less than one and one-half times the employe's regular rate as prescribed in regulations promulgated by the secretary: ... And provided further, That the secretary shall promulgate regulations with respect to

overtime subject to the limitations that no pay for overtime in addition to the regular rate shall be required except for hours in excess of forty hours in a workweek.

**2.** Our scope of review over questions of law is plenary. *Serapiglia v. City of Clairton,* 809 A.2d 1079, 1084 n. 13 (Pa.Cmwlth.2002).

ed for precisely the same purpose as the Minimum Wage Act.

The unemployment compensation system provides financial benefits for persons who lose their jobs through no fault of their own. Section 3 of the Unemployment Compensation Law, Act of December 5, 1936, P.L. 2897, *as amended,* 43 P.S. § 752 (U.C.Law). The Bureau of Employer Tax Operations considers employer-filed petitions for reassessment of unemployment compensation taxes. Section 304 of the U.C. Law, 43 P.S. § 784. However, the Act under review here was specifically enacted, *inter alia,* to address the unequal bargaining power between employees and employers in certain occupations, particularly with regard to negotiating minimum wage standards, Section 1 of the Act, 43 P.S. § 333.101, a goal similar to, but not identical with that of the unemployment system.

We note that our state Act mirrors the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201–219 (FLSA), which is also designed to protect employees who do not have real bargaining power. In fact, the definitions of "employ," "employer" and "employee" in the two acts are virtually identical for purposes of the case *sub judice.*[3] Similarly, neither act contains language discussing any distinction between an employee and an independent contractor. However, there is federal case law which does address this issue.[4] In the past, this Court has indicated that it is proper to give deference to federal interpretation of a federal statute when the state statute substantially parallels it. *See, e.g., Commonwealth v. Pennsylvania Labor Relations Board,* 107 Pa.Cmwlth. 132, 527 A.2d 1097 (1987) (referring to the National Labor Relations Act when interpreting the Public Employe Relations Act.) Therefore, because the state and federal acts have identity of purpose, we hold that federal case law, and the "economic reality" test employed by the federal courts, is the appropriate standard to use.[5]

**3.** Under Section 3 of the Act, 43 P.S. § 333.103, the definitions are:

"Employ" includes to suffer or to permit to work.
"Employer" includes any individual, partnership, association, corporation, business trust, or any person or group of persons acting, directly or indirectly, in the interest of an employer in relation to any employe.
"Employe" includes any individual employed by an employer.

Under Section 3 of FLSA, 29 U.S.C. § 203, the definitions are:
(d) "Employer" includes any person acting directly or indirectly in the interest of an employer in relation to an employee....
(e)(1) Except as provided in paragraphs (2), (3), and (4), the term "employee" means any individual employed by an employer.
....
(g) "Employ" includes to suffer or permit to work.

The omitted language in (d) above refers to certain jurisdictional limitations unique to the federal courts and has no relevance here.

**4.** For an excellent digest of case law in this area, *see* Landis, Debra T., *Determination of "Independent Contractor" and "Employee" Status for Purposes of § 3(e)(1) of the Fair Labor Standards Act,* 51 A.L.R. Fed. 702 (1981).

**5.** Even applying other law, the outcome would likely not change. For example, under Pennsylvania unemployment law, the inquiries are whether the claimant was free of the employer's control, *i.e.,* does the employer direct the job and manner of performance, and whether the claimant was engaged in an independently established trade, *i.e.,* did the claimant have a proprietary interest in the business or was he free from control by the employer. *Sharp Equipment Co. v. Unemployment Compensation Board of Review,* 808 A.2d 1019 (Pa.Cmwlth.2002). The inquiry, additionally, involves determining whether the claimant could perform the work for anyone, or whether the nature of the services is such that they could only be performed for the employer. Moreover, under both the Act and our state unemployment law, there is a statu-

Under the "economic reality" test, the relevant considerations are as follows:

1) the degree of control exercised by the employer over the workers;

2) the worker's opportunity for profit or loss depending upon managerial skill;

3) the alleged worker's investment in equipment or material required for the tasks or the employment of helpers;

4) whether the service rendered requires special skill;

5) the degree of permanence of the working relationship; and

6) the extent to which the work is an integral part of the employer's business.

*Real v. Driscoll Strawberry Associates, Inc.*, 603 F.2d 748, 754 (9th Cir.1979); *Martin v. Selker Brothers, Inc.*, 949 F.2d 1286 (3rd Cir.1991).

■ When applying the economic reality test, the federal courts have looked at the totality of the circumstances and a single factor, by itself, is not necessarily determinative. Moreover, merely because a worker initially calls the particular arrangement something different, does not mean that there was no employer/employee relationship. For example, in *Tony and Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985), "volunteers," working for religious and evangelical reasons, denied their employee status. Despite their protestations, however, the High Court, in applying the economic reality test, determined the existence of an employer/employee relationship. Similarly, in *Real*, the workers signed sublicense agreements identifying themselves as independent contractors. Nonetheless, this factor, by itself, was not persuasive. *Id.*

■ Additionally, a worker cannot waive his or her status as an employee. *Robicheaux v. Radcliff Material, Inc.*, 697 F.2d 662, 667 (5th Cir.1983). In that case, the employees, who were welders, had signed independent contractor agreements, had filed tax returns indicating they were self-employed and furnished their own equipment. However, they received an hourly wage and invoiced employer for hours worked. They worked virtually only for the employer and, thus, were judicially determined to be employees and not independent contractors.

Conceding that the economic reality test is the proper one, Stuber, nonetheless, argues that the trial court erred in reaching the conclusion that Hubler was an employee. In so doing, he relies on the testimony of Stephen Oberholtzer, a superintendent for a general contractor on many of the jobs where Stuber's company had won the bid. This witness stated that he thought Hubler was an independent contractor, that Hubler had access to the premises he was working on, had a key as well as his own tools, and thought Hubler had signed an independent contractor agreement.

Stuber also testified, stating that Hubler had signed Waivers of Mechanics' Liens, which an employee would not need to sign, that he had signed Labor and Industry and tax forms indicating he was an independent contractor, that he thought Hubler had signed an Independent Contractor Agreement with Stuber's company, that Hubler provided his own tools, that he did not directly supervise Hubler, and that he had only trained Hubler for the initial job. Finally, Stuber notes that the trial

tory presumption of an employment relationship that the employer must overcome. *Id.* When these principles are applied to the facts

in the case *sub judice,* a different outcome from the one we reach here is far from assured.

judge stated that, at times in his testimony, Hubler attempted to appear "uncertain" about his status, *i.e.*, that he appeared to be more knowledgeable about what was going on than he let on.

We now turn to the facts as actually found in the case *sub judice.* The trial court determined that Hubler signed some documentation indicating that he was an independent contractor. In addition, he filed tax returns indicating he was self-employed. However, Hubler was never in business for himself prior to working for Stuber; it was Stuber who taught him how to do the work and controlled where he worked. Stuber fixed an hourly wage and supervised Hubler on a semi-regular basis. Hubler had no opportunity to make a profit or suffer a loss and did not enter into separate contracts for each store in which he worked. He received occasional raises from Stuber the longer he worked for him, and his lodgings and meals were paid for by Stuber. Hubler ended his employment before the project he was working on was completed, but Stuber had no legal recourse for breach of contract. Hubler did not perform work for anyone else during the relevant time period, and relied solely upon the income he received from Stuber. The services Hubler provided were integral to Stuber's business and Hubler did not possess any special skills.

While it is clear that both the facts asserted by Stuber and the ones found by the court have support in the record, it is the court's findings that are controlling where, as here, they are supported by the evidence. *Pittsburgh Des Moines Steel Co. v. Board of Property Assessment,* 103 Pa.Cmwlth. 61, 519 A.2d 1080, 1082 (1987) ("Since the proceeding in the trial court was de novo, the credibility and weight of all the evidence is for the fact finder, the trial judge."). That being the case, we next focus on whether the findings, as evaluated by the economic reality test, lead to the conclusion that Hubler was an employee, rather than an independent contractor.

Regarding the degree of control exercised by Stuber over Hubler, the court found that Hubler worked for an hourly wage, was provided with meals and some training. Regarding the possibility of making a profit, the court's findings show that Hubler had no opportunity to do so and relied entirely on Stuber for his income. Concededly, under prong three of the test, the facts favor Stuber, since Hubler *did* provide his own tools and a method for transporting them to the job site. The question of whether special skill was required is a close one, but the court did find that Hubler required initial training, which he received from Stuber. As to the permanency of the relationship, the court found that Hubler had never been in business for himself prior to working for Stuber, that he had worked for a year and a half and that he had no other source of income. These facts can certainly be viewed as indicia of permanency. Finally, the record demonstrates that the work performed by Hubler was an integral part of Stuber's business. Moreover, as *Real* and *Robicheaux* demonstrate, any documentation that Hubler may have signed indicating that he was an independent contractor is simply not controlling.

Based on the above discussion, we conclude that the economic reality test is the appropriate test to use under the Act and, under that test, the trial court could properly find that Hubler was an employee of Stuber. For this reason, we affirm its order.

### ORDER

**NOW**, May 2, 2003, the order of the Court of Common Pleas of Clearfield

County in the above-captioned matter is hereby affirmed.