NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1413
_____

RALPH TALARICO,
                                    Appellant

v.

PUBLIC PARTNERSHIPS, LLC, d/b/a PCG Public Partnerships
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 5-17-cv-2165)
District Judge:  Honorable Jeffrey L. Schmehl
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
October 22, 2020
_____

Before:  CHAGARES, GREENAWAY, JR., and NYGAARD, <u>Circuit</u> <u>Judges</u>

(Opinion filed: December 7, 2020)

_____

OPINION[*]
_____

---

[*]    This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

CHAGARES, Circuit Judge.

Ralph Talarico brought this action on behalf of himself and similarly situated direct care workers ("DCWs") alleging that defendant Public Partnerships, LLC ("PPL") failed to pay him and other similarly situated individuals overtime wages pursuant to the Fair Labor Standards Act ("FLSA"), the Pennsylvania Minimum Wage Act, and the Pennsylvania Wage Payment and Collection Law. The District Court granted PPL's motion for summary judgment because it concluded that PPL was not Talarico's employer. We hold that there is a genuine dispute as to the material fact of whether PPL is a joint employer. Accordingly, we will reverse and remand.

I.

We write solely for the parties' benefit, so our summary of the facts is brief. Talarico and other similarly situated DCWs provide home-care services to individuals with disabilities under Medicaid's Home and Community-Based Services ("HCBS") waiver program (the "Participants"). PPL provides financial management services to Participants under a Grant Agreement for Financial Management Services ("Grant Agreement") that it has with Pennsylvania's Department of Human Services Office of Long-Term Living ("OLTL"). Participants are required to use PPL and cannot select a different agent or operate without one.

After OLTL approves the Participant for the HCBS program, the Participant works with a Service Coordinator to create a Service Budget and a Service Plan, which details how many units of service the Participant may receive. The Service Coordinator is a third party who is not affiliated with PPL.

2

PPL uses standardized paperwork to enroll Participants. Participants and DCWs must complete this paperwork before PPL will pay the DCWs. This paperwork includes a "DCW Agreement" with PPL. The DCW Agreement provides, inter alia, that PPL will process the DCWs' paychecks, DCWs must report any suspected abuse to the Service Coordinator, and DCWs must attend any meetings that either concern the Participant or are requested by the Participant.

After PPL receives this paperwork, PPL determines if the DCW is qualified to work in the program. As part of this process, PPL conducts various background and work authorization checks, including whether the DCW is on Pennsylvania's List of Excluded Individuals/Entities ("LEIE"). If the DCW meets all requirements and submits the paperwork, PPL declares that the DCW is "good to go" or "good to serve." Appendix ("App.") 543; see also App. 1989. PPL will only pay DCWs for the services they provide after PPL deems them "good to serve." DCWs must complete this qualification process every two years.

Additionally, Participants and their DCWs report the DCWs' time to PPL through PPL's timesheets or online portal. PPL then "validate[s]" these timesheets against the Participants' "eligibility and service authorization information" before paying the DCWs. App. 995 ¶ 17. The Commonwealth subsequently reimburses PPL. The Commonwealth sets the maximum rate at which it will reimburse PPL, and PPL calculates the maximum wage rate each DCW may receive based on that reimbursement rate. Beginning in January 2016, PPL began issuing paychecks to DCWs for overtime at OLTL's direction.

PPL is required to maintain, <u>inter alia</u>, DCWs' employment record, tax forms, employment enrollment packet, background check, and time sheets. Similarly, PPL requires DCWs to submit their W-4 forms to PPL so that it can withhold taxes and submits federal, state, and local tax filings on the Participants' behalf. PPL also chooses which workers' compensation carrier to use.

Under PPL's Grant Agreement with the Commonwealth, PPL is also required to provide orientation and training to DCWs. App. 1196; <u>see also</u> App. 531–32. PPL also checks for tax and labor law compliance. The parties agree that PPL plays no role in disciplining DCWs.

The District Court granted PPL's motion for summary judgment, concluding that no reasonable jury could conclude that Talarico was PPL's employee. The court reasoned that PPL did not set DCWs' compensation rate by enforcing limits on how much they could receive, did not provide benefits to DCWs, only maintained "some" employee payroll records, and acted as a fiscal agent for the Participants for payroll purposes. Talarico timely appealed.

II.

The District Court had subject matter jurisdiction under 28 U.S.C. § 1331 for the FLSA claims and supplemental jurisdiction under 28 U.S.C. § 1367 for the Pennsylvania state law claims. We have jurisdiction under 28 U.S.C. § 1291. Our review over the District Court's grant of summary judgment is plenary. <u>Cranbury Brick Yard, LLC v. United States</u>, 943 F.3d 701, 708 (3d Cir. 2019). We will only affirm a grant of summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled

4

to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "factual dispute is 'genuine' if the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Razak v. Uber Techs., Inc., 951 F.3d 137, 144 (3d Cir. 2020) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). We must view the facts in the light most favorable to the non-moving party and draw all inferences in that party's favor. Stratechuk v. Bd. of Educ., 587 F.3d 597, 603 (3d Cir. 2009).

When a legal standard requires the balancing of multiple factors, summary judgment may be appropriate "even if not all of the factors favor one party, so long as the evidence so favors the movant that no reasonable juror could render a verdict against it." Faush v. Tuesday Morning, Inc., 808 F.3d 208, 215 (3d Cir. 2015) (quoting In re Enterprise Rent-A-Car Wage & Hour Emp. Pracs. Litig., 683 F.3d 462, 471 (3d Cir. 2012)) (quotation marks omitted). Whether PPL was Talarico's employer "must be left to the jury if, on the other hand, reasonable minds could come to different conclusions on the issue." Id.

### III.

Talarico contends that PPL failed to compensate him and other similarly situated DCWs for overtime. PPL argues that it was not Talarico's "joint employer." Construing the facts in the light most favorable to Talarico, we conclude that there is a genuine dispute of material fact as to whether PPL is a joint employer and that PPL was thus not entitled to summary judgment.

The FLSA defines "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). When determining whether the FLSA applies to an alleged

5

employer,[1] courts consider "economic reality rather than technical concepts . . . ." Enterprise, 683 F.3d at 467 (quoting Goldberg v. Whitaker House Co-op, Inc., 366 U.S. 28, 33 (1961)).  "Joint employers" are employers who exert "significant control" over an employee by sharing or co-determining the "essential terms and conditions of employment," even if they do not have "ultimate" control.  Id. at 468.

To determine whether an alleged employer is a joint employer, courts consider the following factors set forth in our Enterprise decision:

> 1) the alleged employer's authority to hire and fire the relevant employees; 2) the alleged employer's authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment; 3) the alleged employer's involvement in day-to-day employee supervision, including employee discipline; and 4) the alleged employer's actual control of employee records, such as payroll, insurance, or taxes.

Id. at 469.  These factors are not exhaustive, and whether an alleged employer is a joint employer depends on the "total employment situation and the economic realities of the work relationship."  Id. (quoting Bonnette v. Cal. Health & Welfare Agency, 704 F.2d 1465, 1470 (9th Cir. 1983)) (quotation marks omitted).  We may consequently conclude that an alleged employer is a joint employer even if not all of the Enterprise factors are

---

[1] The Commonwealth Court of Pennsylvania has previously held that "federal case law, and the 'economic reality' test employed by the federal courts, is the appropriate standard to use" to determine if an individual is the alleged employer's employee.  See Commonwealth v. Stuber, 822 A.2d 870, 873 (Pa. Commw. Ct. 2003) (discussing standard in context of Pennsylvania Minimum Wage Act).  Our analysis with respect to the FLSA thus also applies to whether PPL is a joint employer under the Pennsylvania Minimum Wage Act and the Pennsylvania Wage Payment and Collection Law.

present.  See id. at 470 (explaining that not all factors must favor one party to reach conclusion if there is no genuine dispute of material fact).

Viewing the facts in the light most favorable to Talarico, we conclude that PPL does not have the authority to hire and fire employees and that the first Enterprise factor thus weighs against concluding that PPL is a joint employer.  Although Talarico is correct that PPL may be a joint employer even if it does not make the ultimate hiring decision, the record shows that PPL does not exert "significant control."  The Participants, not PPL, choose which DCWs to hire and can choose to hire DCWs even if PPL's background check reveals they have criminal histories.  In contrast, PPL plays a much narrower role in the hiring process and processes the paperwork for and runs background checks on the chosen DCWs.  Although PPL ensures that DCWs are qualified and must certify that they are "good to go," these actions are not enough to show that PPL has the authority to hire DCWs or to exert significant control in the hiring decision, given PPL's lack of involvement in selecting DCWs.

Relatedly, PPL does not have the authority to fire DCWs either.  Although the economic reality inquiry examines the "nature and degree of the alleged employer's control, not why the alleged employer exercised such control," Scantland v. Jeffry Knight, Inc., 721 F.3d 1308, 1316 (11th Cir. 2013), federal and state law prohibit individuals listed on the LEIE from participating in Medicaid and Medicare programs. 42 U.S.C. § 1320a-7; see also 55 Pa. Code § 52.11 (requiring policies to screen staff members and contractors listed on LEIE).  Because of these legal prohibitions, PPL has

7

no discretion and thus no control over which DCWs it must block. The first Enterprise factor consequently weighs against concluding that PPL is a joint employer.

The second Enterprise factor — the alleged employer's authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment — weighs in support of concluding that PPL is a joint employer. Through the DCW Agreement, PPL promulgates work rules, including that DCWs must provide the "supports" authorized in the Individual Service Plan, complete required training, maintain certain documents and records, and participate in requested meetings. App. 2024–26. Additionally, PPL provides orientation and training to DCWs.

PPL also sets DCWs' conditions of employment in terms of compensation, benefits, and the rate and method of payment. Although the Participants select the specific wage rate for their DCWs, PPL caps the maximum rate DCWs may receive based on the Commonwealth's reimbursement rate. In addition to this cap, PPL requires DCWs and the Participants to submit time sheets, which PPL then reviews before paying the DCWs. PPL also chose which workers' compensation carrier to use, although the parties dispute whether PPL provides any insurance coverage or benefits. See Talarico Opening Br. 17; PPL Br. 39; Talarico Reply Br. 21–22. Even if PPL did not provide insurance coverage, there is enough evidence in the record to conclude that PPL has the authority to promulgate work rules and set the conditions of employment.

The third Enterprise factor, however, weighs against concluding that PPL is a joint employer because PPL is not sufficiently involved in the day-to-day supervision of

8

DCWs.  Although PPL does review time sheets, the Participants interact with the DCWs on a day-to-day basis and supervise their work.  The parties agree, in addition, that PPL plays no role in disciplining DCWs.

The fourth Enterprise factor weighs in favor of concluding that PPL is a joint employer because PPL has actual control of DCWs' records.  These records include DCWs' employment records, tax forms, employment enrollment packet, and time sheets. See App. 1966–67; see also App. 651 (time sheets); App. 994 ¶ 15 (I-9 forms).

\* \* \* \* \*

Whether PPL is Talarico's employer is a genuine dispute as to a material fact because the evidence — viewed in the light most favorable to the non-moving party, Talarico — does not so favor PPL that no reasonable juror could render a verdict against it.  See Razak, 951 F.3d at 144; Faush, 808 F.3d at 215.  There is no specific number or combination of Enterprise factors that conclusively determines whether an alleged employer is a joint employer, and the Enterprise test should not be "blindly applied." Enterprise, 683 F.3d at 469 (quoting Bonnette, 704 F.2d at 1470) (quotation marks omitted).  Whether an alleged employer is a joint employer instead depends on the "total employment situation and the economic realities of the work relationship."  Id. (quoting Bonnette, 704 F.2d at 1470) (quotation marks omitted).

PPL promulgates work rules, sets DCWs' conditions of employment, and maintains DCWs' employee records.  The total employment situation thus indicates that Talarico may be PPL's employee, even if not all of the Enterprise factors support that conclusion.  We do not conclude at this stage that PPL is a joint employer.  We conclude

only that there is a genuine dispute as to whether PPL is a joint employer because "reasonable minds could come to different conclusions on the issue." Faush, 808 F.3d at 215. We accordingly hold that PPL was not entitled to summary judgment.

IV.

For the foregoing reasons, we will reverse the District Court's Order and remand for further proceedings.