**Michael MARCAVAGE, Mark Diener, Linda Beckman, Randall Beckman, Susan Startzell, Arlene Elshinnawy and Nancy Major, Petitioners**

v.

**Edward G. RENDELL, Governor of the Commonwealth of Pennsylvania, John M. Perzel, Speaker of the Pennsylvania House of Representatives, Robert C. Jubelirer, President Pro Tempore of the Pennsylvania Senate, Honorable Pedro A. Cortes, Secretary of the Commonwealth of Pennsylvania, All in their Official Capacities and not in Their Private Capacities, and Commonwealth of Pennsylvania, Respondents.**

Commonwealth Court of Pennsylvania.

Argued Sept. 13, 2005.
Decided Dec. 22, 2005.
Reargument En Banc Denied
Jan. 20, 2006.

---

**6.** Act of April 21, 1949, P.L. 665, *as amended*, 53 P.S. § 13133.

Aaron D. Martin, Kennett Square, for petitioners.

Amanda L. Smith, Deputy Attorney General, for respondents, Edward G. Rendell, Hon. Pedro A. Cortes, and Pennsylvania.

Jonathan F. Bloom, Philadelphia, for respondent, John M. Perzel.

Linda J. Shorey, Harrisburg, for respondent, Robert C. Jubelirer.

BEFORE: SMITH–RIBNER, Judge, and SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

Respondents have filed preliminary objections in the nature of a demurrer to Petitioners' amended petition for review filed in the Court's original jurisdiction. Petitioners seek a declaration that the Act of December 3, 2002, P.L. 1176, No. 143 (Act 143) amending Section 2710 of the Crimes Code (ethnic intimidation), 18 Pa. C.S. § 2710, is unconstitutional as violative of the legislative process mandated by Article III, Sections 1, 2, 3 and 4 of the Pennsylvania Constitution (Constitution). They also seek to enjoin enforcement of Act 143.

The legislative process that preceded the enactment of Act 143 is undisputed. Following is a brief summary, however, of amendments to the Act before it was signed into law. Act 143 began as House Bill No. 1493 (HB 1493) introduced on May 2, 2001 and titled "An Act amending Title 18 (Crimes and Offenses) of the Pennsylvania Consolidated Statutes, providing for the criminal offense of agricultural crop destruction." 2001 Legislative Journal–House, May 2, 2001, pp. 1015–1016. During its third consideration on June 4, 2001, the full House amended the title to read: "An Act Amending Title 18 (Crimes and Offenses) of the Pennsylvania Consolidated Statutes, FURTHER PROVIDING FOR AGRICULTURAL VANDALISM; AND providing for the criminal offense of agricultural crop OR LIVESTOCK destruction." HB 1493, Printer's No. 2087. On June 4, 2001, the House passed the amended version and sent it to the Senate.

During its third consideration, the full Senate deleted language in full passed by the House, replaced it with language expanding the scope of the offense of ethnic intimidation under Section 2710 of the Crimes Code and amended the title of HB 1493 to read: "An Act Amending Title 18 (Crimes and Offenses) of the Pennsylvania Consolidated Statutes, further providing for ETHNIC INTIMIDATION." HB 1493, Printer's No. 2382. The Senate passed the final version on June 21, 2001. The House voted to concur in the amendment on November 26, 2002. The House Speaker and the Senate President then signed HB 1493; former Governor Mark Schweiker signed the bill into law on December 3, 2002, and Secretary Pedro A. Cortes certified receipt of a true and correct copy of Act 143.[1]

---

1. Act 143 added the following italicized language to Section 2710 of the Crimes Code:

    **§ 2710   Ethnic intimidation**

    (a) **Offense defined.**—A person commits the offense of ethnic intimidation if, with malicious intention toward the *actual or perceived* race, color, religion, national origin, *ancestry, mental or physical disability, sexual orientation, gender or gender identity* of another individual or group of individuals, he commits an offense under any other provision of this article or under Chapter 33 (relating to arson, criminal mischief and other property destruction) exclusive of section 3307 (relating to institutional vandalism) or under section 3503 (relating to criminal trespass) with respect to such individual or his or her property or with respect to one or more members of such group or to their property.

    . . . .

    (c) **Definition.**—As used in this section "malicious intention" means the intention to commit any act, the commission of which is a necessary element of any offense referred to in subsection (a) motivated by hatred toward the *actual or* perceived race, color, religion or national origin, *ancestry, mental or physical disability, sexual orientation, gender or gender identity* of another individual or group of individuals.

Petitioners argue that Act 143 is unconstitutional under Article III, Sections 1, 2, 3 and 4 of the Constitution (Counts I through IV), providing in part: .

### § 1. Passage of laws

No law shall be passed except by bill, and no bill shall be so altered or amended, on its passage through either House, as to change its original purpose.

### § 2. Reference to committee; printing

No bill shall be considered unless referred to a committee, printed for the use of the members and returned therefrom.

### § 3. Form of bills

No bill shall be passed containing more than one subject, which shall be clearly expressed in its title, except a general appropriation bill or a bill codifying or compiling the law or a part thereof.

### § 4. Consideration of bills

Every bill shall be considered on three different days in each House.

██ Petitioners alleged that they were charged with ethnic intimidation against sexual orientation, gender or gender identity of certain individuals participating in a block party in support of gay rights and that although the charges were ultimately dismissed, they intend to engage in the same activity again. In their briefs, Petitioners have withdrawn Count V of the amended petition for review wherein they alleged that passage of Act 143 violated their right to petition government officials and their right to be free from enforcement of imprudent legislation secured by Article I, Sections 1, 20 and 26 of the

Constitution. Respondents contend that Petitioners have failed to state a claim for which relief may be granted. The House Speaker and the Senate President additionally contend that Petitioners' challenge to the constitutionality of Act 143 is non-justiciable under the separation of powers doctrine, which has been implemented by the enrolled bill doctrine [2] and the political question doctrine, and under the Speech and Debate Clause of Article II, Section 15 of the Constitution. None of Respondents raised an objection to Petitioners' standing to file their action.

██ The rule is well settled that in ruling upon preliminary objections, the courts must accept as true all well-pleaded allegations of material fact as well as all of the inferences reasonably deducible from the facts pleaded. *Department of General Services v. Board of Claims,* 881 A.2d 14 (Pa.Cmwlth.2005). For preliminary objections to be sustained, it must appear with certainty that the law will permit no recovery, and any doubt must be resolved in favor of the non-moving party. *North–Central Pennsylvania Trial Lawyers Ass'n v. Weaver,* 827 A.2d 550 (Pa.Cmwlth. 2003).

The Court will first address the objection as to the justiciability of Petitioners' challenge. In rejecting the argument that the constitutionality of an act under Article III, Section 1 of the Constitution was not justiciable, the Supreme Court stated in *Consumer Party of Pennsylvania v. Commonwealth,* 510 Pa. 158, 176–178, 180, 507 A.2d 323, 332–334 (1986), the following:

> To preserve the delicate balance critical to a proper functioning of a tripartite system of government, this Court has

---

**2.** Under the enrolled bill doctrine, "when a law has been passed and approved and certified in due form, it is no part of the duty of the judiciary to go behind the law ... to inquire into the observance of form in its passage.... The presumption in favor of regularity is essential to the peace and order of the state." *Kilgore v. Magee,* 85 Pa. 401, 412 (1877).

exercised restraint to avoid an intrusion upon the prerogatives of a sister branch of government. Pursuant to this principle we have rejected challenges to the procedural regularity of the passage of legislation that has been passed and approved in due form on the grounds that the matter is non-justiciable. Our abstention in this area has been articulated by employing the enrolled bill doctrine ... or a determination that a provision is directory and not mandatory....

... While it is appropriate to give deference to a co-equal branch of government as long as it is functioning within constitutional constraints, it would be a serious dereliction on our part to deliberately ignore a clear constitutional violation.

....

We agree with the Attorney General that we must not inquire into every allegation of procedural impropriety in the passage of legislation. However, *where the facts are agreed upon and the question presented is whether or not a violation of a mandatory constitutional provision has occurred, it is not only appropriate to provide judicial intervention, and if warranted a judicial remedy, we are mandated to do no less.* (Footnote and citations omitted; emphasis added.)

■■ Article III, Sections 1, 2, 3 and 4 of the Constitution are mandatory directives governing the manner of passing legislation by the General Assembly and not mere general guidelines. *See City of Philadelphia v. Commonwealth,* 575 Pa. 542, 838 A.2d 566 (2003); *Pennsylvania School Boards Ass'n, Inc. v. Commonwealth Ass'n of School Administrators,* 569 Pa. 436, 805 A.2d 476 (2002). Further, the underlying legislative history of Act 143 is undisputed. Under *Consumer Party,* therefore, the constitutionality of Act

143 under Article III, Sections 1, 2, 3 and 4 is justiciable. *See also Parker v. Department of Labor and Industry,* 115 Pa. Cmwlth. 93, 540 A.2d 313 (1988) (holding that enrolled bill doctrine did not preclude this Court from reviewing claim of failure to comply with Article III, Section 3); *Common Cause/Pennsylvania v. Commonwealth,* 710 A.2d 108 (Pa.Cmwlth. 1998), *aff'd,* 562 Pa. 632, 757 A.2d 367 (2000) (holding that claims of failure to comply with Article III, Sections 1, 2, 3, 4 and 5 were not barred by the enrolled bill and political question doctrines and Speech and Debate Clause).

■ Petitioners argue that Act 143 is unconstitutional under Article III on the following grounds: the original purpose of HB 1493 was changed when the Senate deleted the language providing for the criminal offense of agricultural crop and livestock destruction and added the language expanding the scope of the criminal offense of ethnic intimidation (Section 1); the amendment to HB 1493 was not re-referred to a committee (Section 2); the title of HB 1493, "further providing for *ethnic intimidation,*" failed to clearly express the actual content of the bill providing protection based on actual or perceived "*ancestry, mental or physical disability, sexual orientation, gender or gender identity* " (Section 3); and each house failed to consider the amendment to HB 1493 on three separate days (Section 4).

■ An act of the General Assembly carries a strong presumption of constitutionality, and it will not be declared unconstitutional unless it "clearly, palpably and plainly" violates the Constitution. *League of Women Voters of Pennsylvania v. Commonwealth,* 692 A.2d 263, 270 (Pa.Cmwlth. 1997). All doubts must be resolved in favor of the Court's finding of constitutionality. *Commonwealth v. Hendrickson,* 555 Pa. 277, 724 A.2d 315 (1999).

The purpose sought to be achieved by Article III, Section 1 is "to put the members of the [General] Assembly and others interested on notice, by the title of the measure submitted, so that they might vote on it with circumspection." *DeWeese v. Weaver*, 824 A.2d 364, 371 (Pa.Cmwlth. 2003) (quoting *Scudder v. Smith*, 331 Pa. 165, 170, 200 A. 601, 604 (1938); emphasis deleted). In effect, Section 1 simply requires that the title of a bill in final form not be deceptive. *Id.* Section 3 serves "to curb the practice of incorporating into one bill a variety of distinct and independent subjects of legislation and intentionally disguising the real purpose of the bill by a misleading title or by the comprehensive phrase 'and for other purposes.'" *City of Philadelphia*, 575 Pa. at 574, 838 A.2d at 586 (quoting Charles W. Rubendall II, *The Constitution and the Consolidated Statutes*, 80 Dick. L.Rev. 118, 120 (1975)). *See also In re Condemnation by the Department of Transportation*, 511 Pa. 620, 627, 515 A.2d 899, 902 (1986) (stating that the title must place reasonable person on notice of general subject matter but is not required to be "an index or synopsis" of the act's content).

In *Pennsylvanians Against Gambling Expansion Fund, Inc. v. Commonwealth*, 583 Pa. 275, 877 A.2d 383 (2005), the petitioners challenged the constitutionality of the Pennsylvania Race Horse Development and Gaming Act, 4 Pa.C.S. §§ 1101–1904, which began as a bill introduced to provide the State Police with the power and duty to perform criminal background checks of those applying for a license from the State Harness and Horse Racing Commissions. During its last consideration, the Senate made extensive amendments to the bill, increasing the length of the bill from 1 to 145 pages, creating the Pennsylvania Gaming Control Board and numerous funds and providing for the issuance of gaming licenses for slot machine casinos and the Court's exclusive jurisdiction over disputes. The title of the bill was also amended to express the multiple changes. The Pennsylvania Supreme Court set forth a two-part test in deciding the constitutionality of the Act under Article III, Section 1:

First, the court will consider the original purpose of the legislation and compare it to the final purpose and determine whether there has been an alteration or amendment so as to change the original purpose. Second, a court will consider, whether in its final form, the title and contents of the bill are deceptive.

Regarding the determination of the original purpose of the legislation, we recognize the realities of the legislative process which can involve significant changes to legislation in the hopes of consensus, and the "expectation" that legislation will be transformed during the enactment process. Furthermore, our Court is loathe to substitute our judgment for that of the legislative branch under the pretense of determining whether an unconstitutional change in purpose of a piece of legislation has occurred during the course of its enactment. For these reasons, we believe that the original purpose must be viewed in reasonably broad terms.

... Given this approach of considering a reasonably broad original purpose, the General Assembly is given full opportunity to amend and even expand a bill, and not run afoul of the constitutional prohibition on an alteration or amendment that changes its original purpose.

*Id.* at 318, 877 A.2d at 408–409 (citations omitted). The court concluded that the original purpose of the bill, when considered in reasonably broad terms, was to regulate gaming, that the significant amendment and expansion of the bill did not alter or amend its original objective

and that its final title was not deceptive and clearly put a reasonable person on notice of the general subject matter.

Respondents maintain that the original purpose of HB 1493 was not changed by the amendment substituting the criminal offense of ethnic intimidation for the criminal offense of agricultural crop destruction and that the title of the amended bill was not deceptive as to its contents and did put a reasonable person on notice of the general subject matter. Respondents cite *Ritter v. Commonwealth,* 120 Pa.Cmwlth. 374, 548 A.2d 1317 (1988), *aff'd,* 521 Pa. 536, 557 A.2d 1064 (1989), in which the original bill proposing legislation of underage drinking was amended to include a district attorney's rights in litigation involving prisoners, to provide for additional penalties for underage drinking, sales of alcohol to minors, drug trafficking to minors and scattering rubbish and to regulate abortions. This Court found that the final bill did not violate Article III, Sections 1 and 3 because the act embraced a single subject, i.e., amendments to the Crimes Code.

In *Parker* the Court did not find the act challenged there to be violative of Article III, Sections 1 and 3 where the entire title and body of the initial bill creating and empowering the Agricultural Product Development Commission and making an appropriation were deleted and replaced by the final version providing for benefits for certain seasonal workers. In *Fumo v. Pennsylvania Public Utility Commission,* 719 A.2d 10 (Pa.Cmwlth.1998), this Court found no violation of Article III, Sections 1 and 3 where the proposed bill increasing the maximum number of years that a taxicab may be operated was amended to include the amendments to the Public Utility Code deregulating the generation of electricity.

On the other hand, this Court declared an act unconstitutional in *Pennsylvania Ass'n of Rental Dealers v. Commonwealth,* 123 Pa.Cmwlth. 533, 554 A.2d 998 (1989), where the language in the initial bill dealing with farmers' payment of estimated taxes was deleted and replaced by language amending the act relating to the installment sales of goods and services. The Court rejected the Commonwealth's argument that the act was germane to the initially proposed bill because both versions of the bill affect "the economic well being of the Commonwealth," stating that "[t]o take such a broad view of the germaneness test would ... render that test meaningless." *Id.* at 1002. *See also Common Cause of Pennsylvania v. Commonwealth,* 668 A.2d 190 (Pa.Cmwlth.1995), *aff'd,* 544 Pa. 512, 677 A.2d 1206 (1996) (holding that the metamorphosis of a bill originally containing only an appropriation from a restricted account in the general fund to the Public Utility Commission into the General Appropriation Act violated Article III, Section 1). Petitioners argue that even under a reasonably broad original purpose standard set forth in *Pennsylvanians Against Gambling Expansion Fund,* HB 1493 violates Article III, Sections 1 and 3 because it reveals no single purpose and lacks the requisite degree of continuity in object or intent and because the title of the amended bill failed to provide fair notice of the actual contents of the bill.

After reviewing Petitioners' allegations and relevant case law, the Court must conclude that Respondents have failed to establish with certainty that the law will not permit the relief sought in Counts I and III of the amended petition for review. Petitioners point out that twenty-nine of the forty-one original sponsors of the bill, including the prime sponsor, withdrew their sponsorship of the final version of the bill. *See* Paragraph 36, Amended Petition for Review. Petitioners further argue that

the title of HB 1493 is misleading because the concept of "ethnicity" in the title cannot reasonably include "sexual orientation, gender or gender identity" protected by the amendment. Under these circumstances, a determination of whether the original purpose of HB 1493 was changed by the amendment or whether its title was deceptive and failed to clearly put a reasonable person on notice of the actual contents of the bill cannot be made at this stage of the litigation and therefore requires further proceedings. The preliminary objections to Counts 1 and III raising the constitutionality of Act 143 under Article III, Sections 1 and 3 are accordingly overruled.

As to Counts II and IV, an amended bill need not be referred to committees and considered on three separate days in each House pursuant to Article III, Sections 2 and 4 if the amendment does not change the bill's purpose or subject matter. *DeWeese.* Violations of Article III, Sections 2 and 4 are thus dependent on violations of Article III, Sections 1 or 3. *Id.,* 824 A.2d at 368 n7 (citing *Pennsylvania AFL–CIO v. Commonwealth,* 683 A.2d 691, 694 n4 (Pa. Cmwlth.1996), and *Common Cause of Pennsylvania* ). Because the preliminary objections to Counts I and III raising the constitutionality of Act 143 under Sections 1 and 3 are overruled, Respondents' preliminary objections to Counts II and IV raising the constitutionality of the act under Sections 2 and 4 are likewise overruled.

### ORDER

AND NOW, this 22nd day of December, 2005, Respondents' preliminary objections to Counts I, II, III and IV of Petitioners' amended petition for review are overruled. Respondents are directed to file an answer to the amended petition within thirty days of the date of this order.

COHN JUBELIRER and LEAVITT, JJ., did not participate in this decision.