**BAYADA NURSES, INC., Petitioner**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF LABOR AND INDUSTRY, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 9, 2008.

Decided Sept. 4, 2008.

Thomas G. Collins, Harrisburg, for petitioner.

Kathryn J. McDermott, Asst. Counsel, Harrisburg, for respondent.

Irwin Aronson, Philadelphia, for amicus curiae, PA AFL–CIO.

BEFORE: LEADBETTER, President Judge, and McGINLEY, Judge, and SMITH–RIBNER, Judge, and PELLEGRINI, Judge, and FRIEDMAN, Judge, and COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge SMITH–RIBNER.

Before the Court are the preliminary objections in the nature of a demurrer filed by the Department of Labor and Industry (Department) to a petition for review filed by Bayada Nurses, Inc. (Bayada) in the original jurisdiction of this Court seeking relief in the nature of a declaratory judgment. Bayada filed its pre-enforcement regulatory challenge to the validity of the Department's regulation at 34 Pa.Code § 231.1(b) (adopted in 1977), which, according to Bayada, improperly limits the Department's application of the "domestic services" exemption set forth in Section 5(a)(2) of The Minimum Wage Act

(MWA) of 1968, Act of January 17, 1968, P.L. 11, *as amended*, 43 P.S. § 333.105(a)(2), from the minimum wage and overtime pay provisions, which are contained in Section 4(a), (c) of the MWA, 43 P.S. § 333.104(a), (c).

## I

Bayada requests a court declaration that the definition in 34 Pa.Code § 231.1(b) for domestic services is inconsistent with the MWA and thus is void to the extent that it denies domestic services exemptions to third-party agency employers, such as Bayada and its clients, from paying minimum wage and overtime to home health aides.[1] The term domestic services is defined as "[w]ork in or about a private dwelling for an employer in his capacity as a householder, as distinguished from work in or about a private dwelling for such employer in the employer's pursuit of a trade, occupation, profession, enterprise or vocation." Bayada seeks to avoid the requirements under Section 4(a), (c)[2] and requests a declaration that its clients are employers and entitled to the domestic services ex-

---

1. Section 5(a)(2) of the MWA provides in pertinent part:

 (a) Employment in the following classifications shall be exempt from both the minimum wage and overtime provisions of this act:

 . . . .

 (2) Domestic services in or about the private home of the employer[.]

2. Section 4(a), (a.1) and (c) of the MWA provides:

 (a) Every employer shall pay to each of his or her employes wages for all hours worked at a rate of not less than:

 . . . .

 (8) Seven dollars fifteen cents ($7.15) an hour beginning July 1, 2007.

 (a.1) If the minimum wage set forth in the Fair Labor Standards Act of 1938 (52 Stat. 1060, 29 U.S.C. § 201 et seq.) is in-

creased above the minimum wage required under this section, the minimum wage required under this section shall be increased by the same amounts and effective the same date as the increases under the Fair Labor Standards Act, and the provisions of subsection (a) are suspended to the extent they differ from those set forth under the Fair Labor Standards Act.

 . . . .

 (c) *Employes shall be paid for overtime not less than one and one-half times the employe's regular rate as prescribed in regulations promulgated by the secretary*: . . . And provided further, That the secretary shall promulgate regulations with respect to overtime subject to the limitations that no pay for overtime in addition to the regular rate shall be required except for hours in excess of forty hours in a workweek. (Emphasis added.)

emption consistent with Section 13(a)(15) of the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 213(a)(15).[3]

 On November 2, 2007, the Department filed its preliminary objections pursuant to Pa. R.C.P. No. 1028(a)(4) based on Bayada's failure to state a cause of action.[4] It averred that Bayada's petition contains no specific allegations that

3. Section 13(a)(15) of the FLSA provides:
(a) Minimum wage and maximum hour requirements
The provisions of section 206 [relating to minimum wage] (except subsection (d) in the case of paragraph (1) of this subsection) and section 207 [relating to maximum hours] of this title shall not apply with respect to—
....
(15) any employee employed on a casual basis in domestic service employment to provide babysitting services or any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary)[.]
The federal regulation at 29 C.F.R. § 552.3 defines "domestic service employment" as follows:
As used in section 13(a)(15) of the [FLSA], the term domestic service employment refers to services of a household nature performed by an employee in or about a private home (permanent or temporary) of the person by whom he or she is employed. The term includes employees such as cooks, waiters, butlers, valets, maids, housekeepers, governesses, nurses, janitors, laundresses, caretakers, handymen, gardeners, footmen, grooms, and chauffeurs of automobiles for family use. It also includes babysitters employed on other than a casual basis. This listing is illustrative and not exhaustive.
The regulation relating to third party employment at 29 C.F.R. § 552.109(a) also provides:
Employees who are engaged in providing companionship services, as defined in § 552.6, and who are employed by an employer or agency other than the family or household using their services, are exempt from the Act's minimum wage and overtime

the Department's regulation is illegal, that the Department lacked the authority to issue it or that any illegality existed in the regulatory promulgation process. The issues are whether a demurrer should be granted where the definition of domestic services represents a valid and reasonable exercise of Department rule-making authority and whether the MWA should be interpreted separately from the FLSA.[5]

pay requirements by virtue of section 13(a)(15). Assigning such an employee to more than one household or family in the same workweek would not defeat the exemption for that workweek, provided that the services rendered during each assignment come within the definition of companionship services.

4. The Court will sustain preliminary objections when it appears with certainty that the law permits no recovery. *Pennsylvania State Lodge, Fraternal Order of Police v. Commonwealth*, 692 A.2d 609 (Pa.Cmwlth.1997). The Court must accept as true all well-pleaded allegations of material fact along with any reasonably deducible inferences from the allegations. *Marcavage v. Rendell*, 888 A.2d 940 (Pa.Cmwlth.2005).

5. Jeanne Gallagher and Betty Brooks filed an amicus curiae brief and supplemental amicus curiae brief, apprising the Court of their pending class action filed in the Philadelphia County Common Pleas Court against Bayada three months before commencement of the present action, raising the applicability of the domestic services exemption to home health aides. The AARP, Pennsylvania Unemployment Project, Mon Valley Unemployed Committee, Service Employees International Union and Community Legal Services together filed an amicus curiae brief in support of the Department's position. They argue that the regulation reflects a sound policy of exempting only householders from the minimum wage and overtime pay requirements and that to accept Bayada's argument would lead to exemption of all agency-employed workers, which could then "shoehorn" into the exemption employees working in housecleaning services, landscaping or gardening and security companies and thereby relieve for-profit, national or multi-national firms of minimum

## II

Bayada is a Pennsylvania corporation with its principal office located in Moorestown, New Jersey. Bayada has approximately 38 offices and employs over 1000 individuals in Pennsylvania. As a home health care provider, Bayada offers home care services from skilled nursing and personal care to rehabilitation and therapy for pediatric, adult and geriatric clients, and it employs home health aides who assist its clients in performing activities associated with daily living and general companionship. The home health aides are paid an hourly rate with each hour of service billed to the client. Bayada does not pay overtime as it relies upon the exemptions in the MWA and the FLSA. It employs licensed practical nurses and registered nurses, but those positions are not involved in this litigation.

By letter dated September 27, 2005, the Department notified Bayada that an audit of its payroll records would be conducted based on information "that possible discrepancies may exist in the manner payment is made to [Bayada's] employees with regard to the Minimum Wage and Over-

time Law." Petition for Review, Exhibit B (emphasis in original). The Department requested Bayada to examine its payroll records "for a period extending back not less than two years" and to compile any information in audit format, including pay periods, hours worked and amounts due along with other information. *Id.* In January 2006 Bayada responded that it was entitled to the domestic services exemption, and after meetings and further correspondence between the parties the Department notified Bayada on March 22, 2007 that the audit would proceed. Bayada filed its petition seeking to avoid uncertainty as to its operations pursuant to *Arsenal Coal Co. v. Department of Environmental Resources,* 505 Pa. 198, 477 A.2d 1333 (1984).

The Department asserts that its defining the term domestic services represents a valid exercise of legislative rulemaking power and was necessary to aid it in enforcing the MWA and providing consistent and clear application of its terms as well as guidance to the public. Its interpretation of Section 5(a)(2) is that the home health aide must work in the home of the person employing the aide to be exempt from the

wage and overtime requirements under the MWA.

In another amicus curiae brief, the Pennsylvania AFL–CIO argues that the regulation is reasonable and consistent with the MWA and advances its remedial purposes and that granting a declaratory judgment in favor of Bayada would result in harming home health aides and Bayada's clients. Studies show a direct correlation between wages and vacancy rates in home care/home health agencies, and the anticipated shortage of home health care workers will have a negative impact on the quality of care. Moreover, the language of the regulation contemplates a single employer rather than a joint employer relationship, and if the Court found that Bayada and its clients were joint employers, the clients would be required to comply with workers' and unemployment compensation statutes even though they are unable to do so.

The National Association for Home Care & Hospice and the Pennsylvania Association for Home Care argue in their amicus curiae brief in support of Bayada that the Department's regulatory interpretation has serious policy implications of increasing home care service costs, that the interpretation conflicts with the FLSA and that Bayada should be provided an opportunity to establish a joint employment relationship. They note that in 2000 the United States Department of Health and Human Services reported that about 7.2 million people receive home care, and the Department of Labor estimates that there are 663,280 home health aides and personal care aides. A ruling in favor of the Department, therefore, can have unforeseen consequences. Also, a refusal to apply the exemption to third party employment discriminates against the most disabled who do not have the capacity to assume the role of employer.

minimum wage and overtime pay requirements and that Bayada cannot claim the domestic services exemption because it is not the "householder" of the location where the work is performed as contemplated.

■ When an agency adopts a regulation under its delegated legislative power, it is valid and as binding as a statute so long as it is adopted within the agency's granted power, issued pursuant to proper procedure and is reasonable. *Tire Jockey Serv., Inc. v. Department of Environmental Protection,* 591 Pa. 73, 915 A.2d 1165 (2007). As the MWA does not define the term domestic services, the regulation defining it was adopted by the Department within its granted power, *see* Section 9 of the MWA, 43 P.S. § 333.109, and was promulgated in accordance with proper procedures. Bayada does not claim that the regulation was promulgated improperly in its final form on March 18, 1977. The Department submits that the regulation is reasonable and that the definition is consistent with Section 5(a)(2).

■ The rules of statutory construction apply to regulations. *See Highway News, Inc. v. Pennsylvania Department of Transportation,* 789 A.2d 802 (Pa.Cmwlth. 2002). *See also* Section 1921(a),(b) of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1921(a),(b) (providing that every statute should be construed, if possible, to give effect to all provisions with each word given meaning and not treated as mere surplusage). Moreover, a court may not substitute its discretion for that of the administrative agency acting within the boundaries of its powers, absent fraud, bad faith or abuse of power. *Rohrbaugh v. Pennsylvania Public Utility Commission,* 556 Pa. 199, 727 A.2d 1080 (1999). In *Hosp. Ass'n of Pa. v. MacLeod,* 487 Pa. 516, 410 A.2d 731 (1980), the court noted that administrative interpretations are

guides to legislative intent when not disturbed by the legislature.

Notably, the domestic services exemption and regulatory definition have not changed since their original enactment. The MWA determines the exemption based on the capacity of the employer and location of the work, which is to be performed in the home of the person employing the home health aide. Hence, the regulatory definition tracks the MWA's meaning and does not violate legislative intent. *DRB, Inc. v. Pennsylvania Department of Labor and Industry,* 853 A.2d 8 (Pa.Cmwlth.2004), *aff'd,* 585 Pa. 8, 887 A.2d 1216 (2005).

Bayada argues in opposition that it qualifies for the domestic services exemption under plain and unambiguous language in Section 5(a)(2) of the MWA and the definition of domestic services in 34 Pa.Code § 231.1(b) and that there is no reason to resort to rules of statutory construction. As support, it cites *Kmonk–Sullivan v. State Farm Mut. Auto. Ins. Co.,* 567 Pa. 514, 788 A.2d 955 (2001) (observing that when statutes are clear courts need go no further to ascertain legislative intent). It notes that "employer" has been defined clearly as including "any individual, partnership, association, corporation, business trust, or any person or group of persons acting, directly or indirectly, in the interest of an employer in relation to any employe." Section 3(g) of the MWA, 43 P.S. § 333.103(g). Also, its clients are joint employers; the services performed by the home health aides for the clients meet the definition of domestic services; the Department's interpretation of the domestic services exemption is erroneous, is not entitled to any deference and is unreasonable and invalid; Section 5(a)(2) should be construed as referring to the kind of work performed by the home health aides rather than the identity of the employer; and the

Department's interpretation is invalid under the FLSA.

In its reply, the Department states that the MWA and its regulation are more beneficial to employees than the FLSA and that the MWA and regulation are not preempted by the FLSA. The domestic services exemption provisions are not synonymous, with the MWA provision having been enacted six years earlier. *See Department of Labor and Industry, Bureau of Labor Law Compliance v. Stuber*, 822 A.2d 870 (Pa.Cmwlth.2003), *aff'd*, 580 Pa. 66, 859 A.2d 1253 (2004) (stating that deference is given federal interpretation of federal statute when state statute substantially parallels federal statute). Regardless, Pennsylvania may enact more stringent minimum wage and overtime provisions than those in the FLSA even if both laws serve a similar purpose. Section 18(a) of the FLSA, 29 U.S.C. § 218(a).

### III

Section 1 of the MWA, 43 P.S. § 333.101, states the legislative policy:

Employes are employed in some occupations in the Commonwealth of Pennsylvania for wages unreasonably low and not fairly commensurate with the value of the services rendered. Such a condition is contrary to public interest and public policy commands its regulation.... The evils of unreasonable and unfair wages as they affect some employes employed in the Commonwealth of Pennsylvania are such as to render imperative the exercise of the police power of the Commonwealth for the protection of industry and of the employes employed therein and of the public interest of the community at large.

The Secretary of the Department enforces the MWA pursuant to Section 9:

The secretary shall enforce this act. The secretary shall make and, from time to time, revise regulations, with the assistance of the [Minimum Wage Advisory Board], when requested by the secretary, which shall be deemed appropriate to carry out the purposes of this act and to safeguard the minimum wage rates thereby established. Such regulations may include, but are not limited to, regulations defining and governing bona fide executive, administrative, or professional employes and outside salespersons, learners and apprentices, their number, proportion, length of learning period, and other working conditions; handicapped workers; part-time pay; overtime standards; bonuses; allowances for board, lodging, apparel, or other facilities or services customarily furnished by employers to employes; allowances for gratuities; or allowances for such other special conditions or circumstances which may be incidental to a particular employer-employe relationship.

Also, the Secretary shall promulgate regulations relative to overtime subject to the limitation that no overtime pay is required except for hours in excess of forty hours worked in a work week. Section 4(c), 43 P.S. § 333.104(c).

In *Rohrbaugh* the Supreme Court explained the distinctions between rules adopted under administrative agencies' legislative rulemaking power and their interpretative rulemaking power. The former, known as substantive rules or regulations, result from legislative power granted by the legislature and establish new law, rights or duties and "enjoy a general presumption of reasonableness." *Borough of Pottstown v. Pennsylvania Municipal Retirement Board*, 551 Pa. 605, 610, 712 A.2d 741, 743 (1998). Regulations adopted under legislative rulemaking pow-

er have the force of law and are binding on reviewing courts as part of a statute as long as they are within the granted power, issued under proper procedures and are reasonable. *Bailey v. Zoning Board of Adjustment of Philadelphia,* 569 Pa. 147, 801 A.2d 492 (2002). Interpretative rules or regulations construe a statute and do not expand upon its terms, and courts defer to agency interpretations so long as they are reasonable and genuinely track the meaning of the underlying statute. *Id.*[6]

Bayada does not deny that the Department possessed the authority to define domestic services and that it complied with the Act commonly known as the Commonwealth Documents Law, Act of July 31, 1968, P.L. 769, *as amended,* 45 P.S. §§ 1102–1602, in promulgating the regulation. To the contrary, Bayada maintains that the Department adopted the definition in its interpretative rather than its legislative rulemaking power and therefore less deference is required. The definition purportedly is unreasonable and is invalid because it fails to track and conflicts with the plain meaning of the domestic services exemption under Section 5(a)(2) of the MWA by excluding services provided by employees of third party agencies. Bayada argues, in the alternative, that even if it was adopted under the Department's legislative rule-making power, it remains unreasonable and invalid.

▮▮▮ The legislature has not changed the definition of domestic services in 34 Pa.Code § 231.1(b) since its adoption in 1977. It is now firmly established that administrative interpretations, that are not disturbed by the legislature, represent appropriate guides to legislative intent, *Hosp. Ass'n of Pa.,* and in this regard the Court acknowledges the rule expressed in *Commonwealth v. McClintic,* 589 Pa. 465, 909 A.2d 1241 (2006), that the plain language of a statute generally provides the best indication of legislative intent. The Supreme Court has long adhered to the principle of statutory construction that courts must consider the consequences of a particular interpretation and that legislative enactments are generally construed to effectuate their object and to promote justice. *Department of Transportation v. Beam,* 567 Pa. 492, 788 A.2d 357 (2002).

▮▮▮ The MWA grants the Department broad powers to adopt regulations to carry out the statute's purposes of protecting employees from unreasonable and unfair wages and safeguarding the established minimum wage. Section 1 of the MWA. Under Section 9, the Department may adopt regulations that might include but are not limited to defining and governing matters enumerated therein, including "overtime standards" and the "allowances for such other special conditions or circumstances which may be incidental to a particular employer-employe relationship." When Section 9 is construed liberally, it confers in the Department either legislative or interpretative rulemaking power. As such, the Department acted properly when it defined domestic services in 34 Pa.Code § 231.1(b) as "work in or about a private dwelling for an employer in his capacity as a householder." The regulation is reasonable, and it genuinely tracks the underlying meaning of Section 5(a)(2). Where as here the interpretation of an agency charged with enforcing a statute is

---

6. For an agency to exceed its administrative authority, " '[w]hat has been ordered must appear to be so entirely at odds with fundamental principles as to be the expression of a whim rather than an exercise of judgment.' " *Tire Jockey Serv., Inc.,* 591 Pa. at 108, 915 A.2d at 1186 (2007) (quoting *Housing Authority of Chester v. Pennsylvania State Civil Service Commission,* 556 Pa. 621, 635, 730 A.2d 935, 942 (1999)).

not clearly erroneous, the interpretation is entitled to great deference and is to be given controlling weight. *Riverwalk Casino, L.P. v. Pennsylvania Gaming Control Board*, 592 Pa. 505, 926 A.2d 926 (2007).[7]

## IV

██ Bayada next argues that the domestic service exemption in the MWA should be construed *in pari materia* with the FLSA, allowing third party employers to claim the exemption for its employees pursuant to 29 C.F.R. § 552.109(a). *See* n3 *supra*. Statutes are read *in pari materia* when they relate to the same persons or things or to the same class of persons or things and must be construed together if possible. Section 1932 of the Statutory Construction Act, 1 Pa.C.S. § 1932. To buttress its argument, Bayada points out that in *Stuber* the Court noted the virtual-

ly identical definitions for "employ, employer and employee" in the MWA and the FLSA and that because of this identity of purpose the Court adopted the federal economic reality test used by federal courts as the standard for determining if an individual is an employee under the MWA or an independent contractor.[8]

An examination of the domestic services exemptions under both the MWA and the FLSA reveals, however, that they are substantially different. Under Section 5(a)(2) of the MWA, only the domestic services provided in or about a private home or dwelling of a *householder* employer are exempt from minimum wage and overtime pay requirements. Section 13(a)(15) of the FLSA exempts employees employed on a casual basis "in domestic service employment to provide babysitting services or . . .

---

7. Bayada emphasizes the recent decision in *Long Island Care at Home, Ltd., v. Coke*, —— U.S. ——, 127 S.Ct. 2339, 168 L.Ed.2d 54 (2007), where, Bayada submits, the United States Supreme Court confirmed viability of the United States Department of Labor's regulation that allows agencies to take advantage of the Section 13(a)(15) domestic services exemption under the FLSA. The court in that case considered the conflicting definitions of "domestic service employment" in 29 C.F.R. § 552.3, referring only to services of a household nature performed by an employee "in or about a private home . . . of the person by whom he or she is employed," and 29 C.F.R. § 552.109(a), exempting employees of third party agencies "other than the family or household using their services" from the minimum wage and maximum hours requirements.

The court upheld the Department's interpretation that Section 552.109(a) controls over Section 552.3. It indicated that the more specific third party regulation's sole purpose *was to explain how the companionship services exemption* applied to persons employed by third parties where the general regulation's purpose *was to describe the kind of work* to be performed to qualify a worker as a domestic service employee, and it reasoned

that "the Department's interpretation of the two regulations falls well within the principle that an agency's interpretation of its own regulations is 'controlling' unless 'plainly erroneous or inconsistent with' the regulations being interpreted." *Long Island Care at Home*, —— U.S. at ——, 127 S.Ct. at 2349, 168 L.Ed.2d at 67 (quoting *Auer v. Robbins*, 519 U.S. 452, 461, 117 S.Ct. 905, 911, 137 L.Ed.2d 79, 90 (1997)). Finding the third party regulation to be valid and binding, the court reversed the court of appeals' decision holding it unenforceable. This case does not support Bayada's position; rather, it confirms the agency's broad interpretative rulemaking power. It is unnecessary to address the court's observation that Congress did not intend to make the exemption contingent on whether a family member chose to reside in the same household as the invalid or the elderly as the facts here do not present this issue.

8. In *Stuber* the Court noted the relevant considerations when applying the federal economic reality test, including, *inter alia*, the degree of control exercised by the employer over the worker, whether services rendered required special skill, the degree of permanence of the working relationship and extent to which the work is an integral part of the employer's business.

to provide companionship services for individuals...." Companionship services include only performance of incidental general household work not exceeding twenty percent of the total weekly work hours. 29 C.F.R. § 552.6. More importantly, the MWA and the regulation do not exempt employees of third party employers. Inasmuch as relevant provisions of the MWA and the regulation are substantially different from the federal statute and regulation, it is inappropriate to look to federal administrative agency interpretation for guidance in determining whether the Department's regulation improperly limits application of the Section 5(a)(2) domestic services exemption as Bayada claims.

▬▬▬ A federal statute may be interpreted as preempting a state's traditional police power only if such result is clearly intended by Congress. *Wheeling & Lake Erie Ry. Co. v. Pennsylvania Public Utility Commission*, 778 A.2d 785 (Pa.Cmwlth. 2001). As a general rule, federal preemption of a state's police power is not favored. *Id.* Section 18(a) of the FLSA provides in part:

No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a mini-

mum wage higher than the minimum wage established under this chapter or a maximum workweek lower than the maximum workweek established under this chapter....

In interpreting Section 18(a), federal courts have held consistently that the "FLSA does not ... pre-empt state regulation of wages and overtime if the state's standards are more beneficial to workers." *Manliguez v. Joseph*, 226 F.Supp.2d 377, 388 (E.D.N.Y.2002). *See also Overnite Transp. Co. v. Tianti*, 926 F.2d 220 (2d Cir.1991) (holding that state's overtime wage law not preempted by FLSA); *Pettis Moving Co., Inc. v. Roberts*, 784 F.2d 439 (2d Cir.1986) (stating that Congress did not prevent states from regulating overtime pay for workers exempt from FLSA).[9] Based on well-reasoned case authority, the Court concludes that Section 5(a)(2) of the MWA and 34 Pa.Code § 231.1(b) are not preempted by the FLSA.

### V

▬▬▬ Without disputing its status as an employer of the home health aides, Bayada advances the proposition that its householder clients are "joint employers" and, as such, the aides are subject to the

---

**9.** Bayada cites *Coil v. Jack Tanner Towing Co., Inc.*, 242 F.Supp.2d 555 (S.D.Ill.2002), involving whether the Illinois minimum wage law applied to a seaman on the Mississippi River and Illinois waters. Section 13(b)(6) of the FLSA, 29 U.S.C. § 213(b)(6), specifically excludes "any employee employed as a seaman" from the maximum overtime hours. The court held that state laws yield to federal maritime law where a state remedy works material prejudice to the general maritime law and that state's overtime law may not be applied without entering a realm in which Congress has taken specific action. The case *sub judice* does not involve a federal statute preempting states from excluding third party home care agencies from the exemption. In *Bell v. Addus Healthcare, Inc.*, 2007 WL

2344972, at 3, 2007 U.S. Dist. Lexis 59464, at 10 (W.D.Wash.2007), the Oregon minimum wage statute, Or.Rev.Stat. § 653.020(14), exempted an individual employed in "services of a household nature performed by an employee in or about a family home (permanent or temporary) of the person by whom the employee is employed...." The regulations under the Oregon statute did not contain provisions similar to 29 C.F.R § 552.109(a) exempting employees of third party agencies from minimum wage and overtime requirements. Finding that Oregon law defines domestic services more narrowly than federal law and thus is more beneficial to domestic services employees, the court rejected the third party employer's argument that Congress intended to preempt the entire area.

domestic services exemption as employees of the clients. Bayada relies upon the definition of employer provided in Section 3(g) of the MWA as well as the borrowed servant doctrine under which a servant furnished by one person to another becomes an employee of the latter, if the latter, *inter alia*, has the right to control the work to be done and the manner of performing the work. *JFC Temps, Inc. v. Workmen's Compensation Appeal Board (Lindsay)*, 545 Pa. 149, 680 A.2d 862 (1996). Other factors include wage payment, the right to select and discharge an employee and the skill or expertise required to perform the work. *Id. See also 3D Trucking Co., Inc. v. Workers' Compensation Appeal Board (Fine)*, 921 A.2d 1281 (Pa.Cmwlth.2007).

Bayada rejects the Department's reliance upon the economic reality test adopted in *Stuber*. In Bayada's view, its clients have all of the attributes of traditional employers, except for the payment of wages, and it acts directly and indirectly in the interests of those clients. Bayada stresses the allegations that its clients have the right to select their home health aides, to control their hours of employment, to direct and supervise their tasks and activities during the work day and to request the services of a new or alternate aide. Petition for Review, ¶ 40. These allegations, however, fail to demonstrate control by the clients over the work performance of the aides. Bayada acknowledges that it screens the aides, including conducting criminal background and reference checks, to ensure safe and reliable care givers for its clients and that it determines the aides to be assigned, pays their hourly wages and bills the clients for the aides' hourly rate of pay plus an amount to cover workers' compensation, insurance and taxes along with Bayada's overhead and margin. *Id.* at ¶¶ 41 – 47. Bayada still retains the right to discharge the aides.

In conclusion, Bayada's allegations of material fact, accepted as true, fail to establish a cause of action entitling it to relief under any theory that Bayada advanced, and, as a consequence, the Court sustains the Department's demurrer. *Pennsylvania State Lodge, Fraternal Order of Police v. Commonwealth*, 692 A.2d 609 (Pa.Cmwlth.1997) (stating that to sustain preliminary objections it must appear with certainty that the law will permit no recovery). The regulation at 34 Pa.Code § 231.1(b) is reasonable and valid, it is consistent with Section 5(a)(2) of the MWA and neither Section 5(a)(2) nor 34 Pa.Code § 231.1(b) is preempted by the FLSA. Accordingly, the Court dismisses Bayada's petition for review.

### ORDER

AND NOW, this 4th day of September, 2008, the Court sustains the preliminary objections in the nature of a demurrer filed by the Pennsylvania Department of Labor and Industry and hereby dismisses the petition for review filed by Bayada Nurses, Inc.

DISSENTING OPINION BY Judge PELLEGRINI.

I respectfully dissent from the majority's decision because this matter is not ripe for review and this Court lacks jurisdiction to hear its appeal. Bayada Nurses, Inc. (Bayada) has not yet suffered any harm, and if and when it does suffer any harm, it must first exhaust its administrative remedies with the Department of Labor and Industry (Department).

Bayada is a home health care provider. On September 27, 2005, the Department sent Bayada a letter stating that it would be conducting an audit on October 14, 2005, and requesting that Bayada "examine [its] payroll records for a period ex-

tending back not less than two years with regard to compliance with [the Minimum Wage and Overtime Law]. Our investigators will assist in any questions you may have concerning specific areas of compliance. We ask that you compile any information in audit format, including specific pay periods, hours worked, and amount owed along with the name, address, telephone number and social security number of any employee potentially affected by the audit ready for review." This was due to "possible discrepancies" in the manner Bayada paid overtime to its home health aides. From the date of that letter through March 22, 2007, Bayada and the Department sent letters back and forth with Bayada disputing the definition of "domestic services" found at 34 Pa.Code § 231.1 under Pennsylvania's Minimum Wage Act (MWA)[1] and requesting the Department not to proceed with the audit. After much discussion on the interpretation of the definition, the Department's position was that Bayada was not entitled to the domestic services exemption under 43 Pa.Code § 333.105, and it would proceed with the audit. As of the date of the last letter from the Department to Bayada on March 22, 2007, it stated that the audit would proceed.

On October 3, 2007, Bayada filed a petition for review in the nature of a complaint for declaratory judgment in this Court's original jurisdiction seeking a declaratory judgment invalidating the definition of "domestic services" found in the MWA, a declaration that Bayada's clients were employers of the Home Health Aide that it employed,[2] and a determination that the MWA domestic services exemption should be interpreted the same as the Federal Fair Labor Standards Act (FLSA) of 1938, 29 U.S.C. § 213(a)(15).[3] It argued that it qualified for the domestic services exemption under the plain and unambiguous language in Section 5(a)(2) of the MWA and the definition of domestic services in 34 Pa.Code § 231.1(b). It also argued that the domestic services exemption in the MWA should be construed in *pari materia* with the FLSA to allow third party employers to claim the exemption for its employees pursuant to 29 C.F.R. § 552.109(a). Nowhere in the complaint

---

1. Act of January 17, 1968, P.L. 11, *as amended.* 43 P.S. § 333.105.(a)(2) provides:

 (a) Employment in the following classifications shall be exempt from both the minimum wage and overtime provisions of this act:

 \* \* \*

 (2) Domestic services in or about the private home of the employer.

 The regulation found at 34 Pa.Code § 231.1 defines "domestic services" as "work in or about a private dwelling for an employer in his capacity as a householder, as distinguished from work in or about a private dwelling for such employer in the employer's pursuit of a trade, occupation, profession, enterprise or vocation."

2. The MWA defined "Employer" to include "any individual, partnership, association, corporation, business trust, or any person or group of persons acting, directly or indirectly, in the interest of an employer in relation to any employe." Section 3(g) of the MWA, 43 P.S. § 333.103(g).

3. Section 213(a)(15) of the FLSA provides:

 (a) Minimum wage and maximum hour requirements.
 The provisions of section 206 [relating to minimum wage] (except subsection (d) in the case of paragraph (1) of this subsection) and section 207 [relating to maximum hours] of this title shall not apply with respect to—
 (15) any employee employed on a casual basis in domestic service employment to provide babysitting services or any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary).

did Bayada allege that the audit had been completed and an assessment had been made by the Department.

In response, the Department has filed preliminary objections which are now before this Court arguing that Bayada's petition is legally insufficient because the Department's definition of domestic services was a proper exercise of its rule-making authority. It also argues that Bayada has failed to state a claim upon which relief may be granted. It did not contend that Bayada had failed to exhaust its administrative remedies.

After addressing both parties' arguments, the majority agrees, concluding that "The regulation at 34 Pa.Code § 231.1(b) is reasonable and valid, it is consistent with Section 5(a)(2) of the MWA and neither Section 5(a)(2) nor 34 Pa.Code § 231.1(b) is preempted by the FLSA." (Majority opinion at 16.) I respectfully disagree because the majority need not have addressed any of the arguments raised as the issues raised by Bayada are not ripe for review and this Court lacks jurisdiction to hear the matter. Bayada has not alleged in its complaint that the audit has taken place and that fees have been assessed; therefore, no injury has been suffered. "Courts are reluctant to grant a declaratory judgment and injunctive remedies against administrative agencies, unless the controversy is ripe for judicial resolution." *Pennsylvania Dental Hygienists' Association, Inc. v. State Board of Dentistry*, 672 A.2d 414, 416 (Pa. Cmwlth.1996).[4]

Even though not raised by the parties, the failure to utilize an available administrative remedy constitutes a jurisdictional defect, which may be raised at any point in the proceedings, either by the parties or by the court *sua sponte*. *Lashe v. Northern York County School District*, 52 Pa. Cmwlth. 541, 417 A.2d 260, 263 (1980) (holding that the parties cannot confer jurisdiction by their failure to raise an issue. "The distinction between power to hear an action and the form of action is significant because a court has the duty to raise the issue sua sponte where the former is involved, i.e., where a true jurisdictional issue is present. It is clear that parties may not confer jurisdiction over a cause of action or the subject matter of an action by consent or agreement.") *See also Cope v. Bethlehem Housing Authority*, 501 A.2d 1178 (Pa.Cmwlth.1985); *Brog v. Department of Public Welfare*, 43 Pa.Cmwlth. 27, 401 A.2d 613 (1979).

As in most precepts, there are exceptions to the rule and the exception applicable here is one set forth in *Arsenal Coal Company v. Department of Environmental Resources*, 505 Pa. 198, 477 A.2d 1333 (1984) (a court of equity must refrain from exercising its jurisdiction when there exists an adequate statutory remedy.) *Arsenal Coal* involved whether equity was available to hear a pre-enforcement challenge to certain regulations of the Department of Environmental Resources even though there was a "post enforcement" remedy available. While it cautioned that normally the administrative process must be followed,[5] *Arsenal* held that a pre-en-

---

**4.** In *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–149, 87 S.Ct. 1507, 18 L.Ed.2d 681, the United States Supreme Court explained the rationale behind the ripeness doctrine stating:

"[It] is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagree-

ments over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."

**5.** "It is fundamental that prior to resorting to judicial remedies, litigants must exhaust all the adequate and available administrative

forcement challenge brought in equity is allowable where the regulation causes actual, present harm. Whether that harm is present is determined by whether "the effect of the challenged regulations upon the industry is direct and immediate, the hardship thus presented suffices to establish the justiciability of the challenge in advance of enforcement." 505 Pa. at 209, 477 A.2d at 1339. In finding that the remedy was not adequate, it focused on the "lengthy process" by which the validity of the regulations would be addressed which would result in "ongoing uncertainty in the day to day business operations of an industry which the General Assembly clearly intended to protect from unnecessary upheaval." *Id.* at 210, 477 A.2d at 1340. In *Concerned Citizens of Chestnuthill Township*, 158 Pa.Cmwlth. 248, 632 A.2d 1, 3 (1993), this Court summarized the Supreme Court's position in *Arsenal Coal* as follows: "In other words, unless the regulation itself is self-executing, there is no harm done to the litigant until the [Department of Environmental Resources] takes some action to apply and enforce its regulations, in which case the normal post-enforcement review process is deemed an adequate remedy."

In this case, Bayada is contending that 34 Pa.Code § 231.1 defining "domestic services" as "work in or about a private dwelling for an employer in his capacity as a householder, as distinguished from work in or about a private dwelling for such employer in the employer's pursuit of a trade, occupation, profession, enterprise or vocation" is inconsistent with the MWA definition which provides that employment is exempt from the overtime provisions if it involves "[d]omestic services in or about the private home of the employer." 43 P.S. § 333.105.(a)(2). It contends that as a result, it will have to pay more to its employees and correspondingly charge more to private individuals who use the services for home health care if the Department's regulation is enforced, and that there will be uncertainty in the whole health care industry as a result because the Department regulation is causing uncertainty to the home health care industry as it is also at variance with how similar FLSA provisions are administered.

While Bayada's argument would certainly fall within the exception if the Department had recently promulgated this regulation, the regulation was adopted in 1977. A regulation existing for that long cannot cause "ongoing uncertainty in the day to day business operations of an industry" when it has been existing for over 31 years.

Because Bayada has failed to exhaust its administrative remedies, I would dismiss its petition for review. Accordingly, I dissent.

Judges COHN JUBELIRER and LEAVITT join this dissenting opinion.

---

remedies." *County of Berks, ex rel. Baldwin v. Pennsylvania Labor Relations Board*, 544 Pa. 541, 678 A.2d 355 (1996). "Even where a constitutional question is presented, it remains the rule that a litigant must ordinarily follow statutorily-prescribed remedies." *Muir v. Alexander*, 858 A.2d 653, 660 (Pa. Cmwlth.2004). "The additional element required to confer equitable jurisdiction is either the absence of a statutorily-prescribed remedy or, if such a remedy exists, then a showing of its inadequacy in the circumstances." *Id.* (quoting *Borough of Green Tree v. Board of Property Assessments, Appeals and Review of Allegheny County*, 459 Pa. 268, 328 A.2d 819, 823 (1974)).