**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1413
_____

RAFAEL ESPINOZA,
Individually and on behalf of those
similarly situated,
Appellant

v.

ATLAS RAILROAD CONSTRUCTION, LLC, and;
GENESEE & WYOMING, INC.
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 2-15-cv-01189)
Magistrate Judge: Honorable Maureen P. Kelly
_____

ARGUED October 7, 2016
_____

Before: SHWARTZ, COWEN, and ROTH, <u>Circuit Judges</u>.

(Filed: November 30, 2016 )
_____

OPINION[*]
_____


Peter D. Winebrake, Esq. [ARGUED]
R. Andrew Santillo, Esq.

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Winebrake & Santillo
715 Twinning Road
Suite 211, Twinning Office Center
Dresher, PA 19025

*Counsel for Appellant*

Stanley Weiner, Esq. [ARGUED]
Jones Day
901 Lakeside Avenue
North Point
Cleveland, OH 44114

*Counsel for Appellees*

SHWARTZ, <u>Circuit Judge</u>.

Rafael Espinoza appeals from the District Court's order dismissing his putative class action complaint against Atlas Railroad Construction, LLC. Espinoza alleges that Atlas failed to compensate him for time traveling between his home and Atlas's work sites in violation of the Pennsylvania Minimum Wage Act ("PMWA"). Because Espinoza's complaint failed to allege that such travel was a duty of his employment, the District Court appropriately dismissed his complaint, and we will therefore affirm.

I

Espinoza was employed by Atlas to perform manual labor tasks on railroad construction and maintenance projects at various sites, some of which were located "hundreds of miles" away from his Pennsylvania residence. App. 21 ¶ 11. When he worked at such distant locations, Espinoza was unable to commute home on a daily basis and instead stayed in hotels or other temporary housing located near the work sites.

2

Espinoza's schedule "consist[ed of]: (i) eight (8) consecutive 10.5-hour shifts (generally running from approximately 7:00 am until approximately 5:30 pm) at the project site followed by (ii) six (6) consecutive days away from the project site." App. 22 ¶ 12. Atlas "generally expect[ed Espinoza] to arrive . . . near the assigned project site on the evening before the first 10.5-hour shift," and he would often travel home the day after he completed his final shift, sometime during his "regular working hours" of 7:00 am to 5:30 pm. App. 22 ¶¶ 13-14. Atlas did not compensate Espinoza for this travel time and would terminate him if he refused to engage in such travel.

Espinoza filed an amended putative class-action complaint alleging that Atlas violated the PMWA by failing to pay him and his fellow class members for all of their "hours worked," which he contends included the time he traveled to and from the work sites. Atlas moved to dismiss Espinoza's complaint, arguing that he failed to state a claim under the applicable statute and regulation.[1] The District Court granted the motion in part, dismissing with prejudice his claim to the extent it sought payment for travel occurring on "days he was not scheduled to work" because such travel did not occur during his "normal working hours."[2] App. 10. The District Court also found that Espinoza had not sufficiently alleged facts showing that any of his travel was a duty of his employment because he did not specify any work duties that he performed while

_____

[1] The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636.

[2] The District Court also denied without prejudice the motion with respect to claims for payment for travel occurring during Espinoza's scheduled work days because the pleading did not clearly state whether his claims were based on travel on those dates. Espinoza asserts that most of his travel did not occur on such dates, and so he is no longer pursuing compensation for such travel.

traveling, such as transporting equipment or performing maintenance along the travel route. The District Court gave Espinoza an opportunity to file a second amended complaint to allege additional facts about travel on scheduled work days and the ways in which such travels were part of his duties as an employee. Espinoza declined to file an amended pleading, and the District Court subsequently dismissed his entire complaint with prejudice. Espinoza appeals.

## II[3]

We must decide whether Espinoza alleged sufficient facts to show that his travel on the days preceding and following his work shifts was compensable under the PMWA. The PMWA provides that "[e]very employer shall pay to each of his or her employe[es] wages for all hours worked." 43 Pa. Cons. Stat. § 333.104(a). The PMWA regulations

---

[3] The District Court had jurisdiction under 28 U.S.C. § 1332. The amount in controversy exceeds $75,000 based primarily on the amount of attorney's fees that may be awarded under 43 Pa. Stat. § 333.113 if Espinoza prevailed. Notice of Removal at 3-6, Espinoza v. Atlas R.R. Constr. LLC, No. 15-1189, 2016 WL 279000, at *1 (W.D. Pa. Jan. 22, 2016) (hereinafter "Notice of Removal"); Suber v. Chrysler Corp., 104 F.3d 578, 585 (3d Cir. 1997) ("[I]n calculating the amount in controversy, we must consider potential attorney's fees."). We have jurisdiction under 28 U.S.C. § 1291.

We exercise plenary review of a district court's grant of a motion to dismiss, Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220 (3d Cir. 2011), and apply the same standard as the District Court. See Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co., 768 F.3d 284, 290 (3d Cir. 2014). Under this standard, we must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)), "but we disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements," James v. City of Wilkes-Barre, 700 F.3d 675, 679 (3d Cir. 2012). A claim "has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 663.

4

define "hours worked" to include "time spent in traveling as part of the duties of the employee during normal working hours and time during which an employee is employed or permitted to work." 34 Pa. Code § 231.1 ("Travel Regulation"). Consequently, travel time is compensable under the PMWA if it is (1) "part of the duties of the employee" and (2) occurs "during normal working hours." Id.

To interpret this regulation, we first look to applicable decisions of the Pennsylvania Supreme Court. Spence v. ESAB Grp., Inc., 623 F.3d 212, 216 (3d Cir. 2010). In the absence of such decisions, we must predict how the Pennsylvania Supreme Court would rule on the issue by looking to decisions of the Commonwealth's appellate courts, the federal courts, and other reliable sources. Id. at 216-17 (citations omitted).

One reliable source of interpretation is the Pennsylvania rules of construction. The rules direct that the object of interpreting Pennsylvania statutes is to effectuate the intent of the General Assembly. 1 Pa. Cons. Stat. §§ 1502(a)(1)(ii), 1921(a); see also Bayada Nurses, Inc. v. Commonwealth, 8 A.3d 866, 880-81 (Pa. 2010) (applying this principle of construction to interpret the PMWA and regulations promulgating it). To effectuate the intent of the legislature, we must start with the text. The rules of construction specifically state that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded." 1 Pa. Cons. Stat. § 1921(b); see also Commonwealth v. Jarowecki, 985 A.2d 955, 959 (Pa. 2009).[4] When the language in

---

[4] If the language is ambiguous, the rules direct courts to then consider contextual factors, including:

(1) The occasion and necessity for the statute.

5

question does not include technical phrases, we must construe it "according to [its] common and approved usage," 1 Pa. Cons. Stat. § 1903(a), and in a manner that avoids surplusage, id. § 1922(2). We will apply these tools to interpret the Travel Regulation.

Espinoza's pleading fails to set forth factual allegations that satisfy the "duty" component of the Travel Regulation. We accordingly need not—and do not—decide whether his allegations meet the "normal working hours" component. Instead, we merely assume that Espinoza's travel occurred during his normal working hours.

Unlike the provisions of the Fair Labor Standards Act [FLSA] that govern compensable travel,[5] the PWMA regulation expressly requires that the travel be part of

---

(2) The circumstances under which it was enacted.
(3) The mischief to be remedied.
(4) The object to be attained.
(5) The former law, if any, including other statutes upon the same or similar subjects.
(6) The consequences of a particular interpretation.
(7) The contemporaneous legislative history.
(8) Legislative and administrative interpretations of such statute.

1 Pa. Cons. Stat. § 1921(c).
[5] The federal regulation defining compensable travel time under the FLSA provides:

Travel that keeps an employee away from home overnight is travel away from home. Travel away from home is clearly worktime when it cuts across the employee's workday. The employee is simply substituting travel for other duties. The time is not only hours worked on regular working days during normal working hours but also during the corresponding hours on nonworking days. Thus, if an employee regularly works from 9 a.m. to 5 p.m. from Monday through Friday the travel time during these hours is worktime on Saturday and Sunday as well as on the other days. Regular meal period time is not counted. As an enforcement policy the Divisions will not consider as worktime that time spent in travel away from home outside of regular working hours as a passenger on an airplane, train, boat, bus, or automobile.

the employee's duties to be deemed part of the "hours worked" for which he is entitled to be paid. Despite this difference, Espinoza implores us to interpret Pennsylvania's Travel Regulation in light of the FLSA's provisions regarding compensable travel time. We decline to do so in this case. When the PMWA "substantially parallels" the FLSA, Pennsylvania and federal courts have used FLSA law for interpretative guidance because the statutes have similar purposes. Commonwealth v. Stuber, 822 A.2d 870, 873 (Pa. Commw. Ct. 2003), aff'd sub nom. 859 A.2d 1253 (Pa. 2004); see also Resch v. Krapf's Coaches, Inc., 785 F.3d 869, 871 n.4 (3d Cir. 2015) (applying federal law to determine whether the motor carrier exemption to overtime payments applied to both FLSA and PMWA claims where the parties agreed that "identical principles" controlled both the FLSA and the PMWA exemption). However, the courts look to the FLSA to construe and apply the PMWA only where the state and federal provisions are similar to each other or where there is a need to fill in a gap missing in the state law.[6] Espinoza argues

---

29 C.F.R. § 785.39.

The FLSA's travel regulation was promulgated to effectuate the Portal to Portal Act. See 29 U.S.C. § 254. A member of the Pennsylvania Supreme Court observed that since the "Pennsylvania General Assembly has not in any way adopted the federal Portal to Portal Act," provisions of the Portal to Portal Act might be less compatible with the PMWA than other portions of the FLSA. Caiarelli v. Sears, Roebuck & Co., 46 A.3d 643, 648 (Pa. 2012) (McCaffery, J. dissenting); see also Bonds v. GMS Mine Repair & Maint., Inc., No. 2:13-CV-1217, 2015 WL 5602607, at *11 (W.D. Pa. Sept. 23, 2015) (quoting Caiarelli and concluding that the Portal to Portal Act's additions to the FLSA do not apply to the PMWA).

[6] Where the two acts diverge, however, courts do not defer to federal law to interpret state law. See, e.g., Bayada Nurses, Inc., 8 A.3d at 882-83 (holding that federal regulations pertaining to the domestic service exemption to the FLSA did not apply to the analogous but narrower PMWA exemption and that Pennsylvania may interpret its law in a manner more beneficial to employees than federal law); see also Foster v. Kraft Foods

7

that the dearth of case law construing the regulation should lead us to rely on the FLSA. While he is correct that there is little case law construing or applying the Travel Regulation, applying the FLSA here is not the answer to the drought. This is because the FLSA differs from the Travel Regulation in a specific way.

The FLSA regulation states that compensable travel time is not limited to "hours worked on regular working days during normal working hours but also [covers travel] during the corresponding hours on nonworking days." 29 C.F.R. § 785.39. While this is similar to the PMWA requirement that the travel occur during "normal working hours," the federal regulation does not include the PMWA's "duty" component. 34 Pa. Code § 231.1 (stating that travel time is compensable under the PMWA only if it is "time spent in traveling as part of the duties of the employee"). Instead, the federal regulation states that when travel time "cuts across" a regular work day, "[t]he employee is simply substituting travel for other duties." 29 C.F.R. § 785.39. Thus, under the federal regulation, travel from one's home community that cuts across one's normal working

_____

Glob., Inc., 285 F.R.D. 343, 345 (W.D. Pa. 2012) (declining to apply the FLSA's method for calculating overtime payments to the PMWA analysis where the federal method conflicted with the language of the PMWA); Truman v. DeWolff, Boberg & Assocs., Inc., No. 07-01702, 2009 WL 2015126, at *2 (W.D. Pa. July 7, 2009) ("In light of the FLSA's explicit recognition that states may offer greater protections to its employees than the FLSA, we are reluctant to find an unstated foreign-work exemption in the PMWA based solely on the fact that the FLSA contains such an exemption."); cf. Smiley v. E.I. DuPont De Nemours & Co., --- F.3d ---, No. 14-4583, 2016 WL 5864508, at *2 n.4 (3d Cir. Oct. 7, 2016) (noting that the Pennsylvania Wage Payment and Collection Law and the FLSA have parallel remedies but "material differences" may exist between claims under each law).

8

hours becomes a compensable employment duty merely by occurring during regular working hours.

Under the PMWA, however, the travel itself must be part of the duties of the employee. This is an additional requirement not included in the FLSA and, consequently, the PMWA test for compensable travel time does not "substantially parallel" the FLSA provision and we decline to rely on the FLSA to interpret the PMWA.

We thus examine, without reference to the FLSA, whether Espinoza has alleged that his travel from the work sites to his home was "part of the duties of the employee." 34 Pa. Code § 231.1. From what we can glean from the limited case law on this topic, the courts seem to view such a duty as requiring more than simply driving to or from a work site. For example, Pennsylvania courts addressed whether Sears service repair technicians were entitled to compensation for "time spent attending to Sears matters while traveling in their Sears vans from their homes to customers' homes and back." Caiarelli v. Sears, Roebuck & Co., 46 A.3d 643, 644 (Pa. 2012) (McCaffery, J. dissenting). The appellate court affirmed the grant of summary judgment in favor of Sears, finding that the technicians' travel time was merely commuting time and was therefore not compensable. Id. at 645-46. The Pennsylvania Supreme Court granted leave for the appeal and then dismissed it for having been improvidently granted. Id. at 644. In his dissent to the dismissal, Justice McCaffery pointed out that the technicians alleged that they had to perform certain work during their travel time, such as "dealing with the handheld computer and scheduling appointments." Id. at 646. The dissent concluded that because the evidentiary record conflicted about the need to perform work

9

during the travel time, the grant of summary judgment was in error. Id. at 647-48. Though this dissent is non-precedential, it indicates that the Pennsylvania courts focused the inquiry on whether the employees were performing work-related tasks, aside from travel, during their travel time.

In a slightly different context, our Court adopted a similar view. In Pennsylvania Federation of the Brotherhood of Maintenance of Way Employees v. National Railroad Passenger Corporation ("AMTRAK"), this Court considered an action brought by a labor union and one of its members against AMTRAK alleging that the company violated the PMWA by failing to provide overtime pay to employees for time spent traveling on AMTRAK vehicles between work sites and their work headquarters. 989 F.2d 112, 113-14 (3d Cir. 1993). The District Court dismissed the complaint for lack of subject matter jurisdiction because the dispute involved an interpretation of a collective bargaining agreement, which was within the exclusive jurisdiction of the National Railroad Adjustment Board. Our Court upheld the dismissal, concluding that the facts alleged in the complaint—that at the start and end of their shifts the employees traveled in company vehicles between work sites and the company headquarters—were not sufficient to establish that such travel was a duty of their employment. See id. at 115. Rather, we observed that determining whether travel time was part of the employees' duties depended on the nature of the employees' duties, as specified by the employment agreement. Id. at 115-16. While our ruling did not identify facts that would show when travel time would be a part of the duties of the employees, it did hold that showing employees traveled before and after their daily shifts in company vehicles between work

10

sites and the company headquarters alone did not establish that such travel was a duty of the employees. Id.; see also Pa. Fed'n of the Bhd. of Maint. of Way Emps. v. Nat'l R.R. Passenger Corp., No. 91-2776, 1992 WL 165993, at *1 (E.D. Pa. June 15, 1992) (specifying that the employees traveled to the work sites and returned to the headquarters on a daily basis). Together, these cases reveal that merely alleging that an employee was required to travel to and from a work site, without more, does not demonstrate that the travel was a duty of the employment for purposes of the PMWA. Put differently, for travel to be considered a duty of employment, it cannot merely be a necessary means of accessing the employee's job; it must, instead, be an integral feature of the job itself.

This interpretation comports with the Pennsylvania rules of construction as it gives meaning to the entire phrase "traveling as part of the duties of the employee." This phrase covers more than an employee's commute, which is not a duty of the employee but rather is a precursor to or follows the completion of one's duties. By requiring that the travel be part of the duties, the regulators made clear that the regulation did not apply to such preliminary activities but rather provided for compensation for tasks indispensable to the performance of one's work.

Espinoza has failed to allege any facts showing that his travel was a duty of his employment as defined under the PMWA. Espinoza alleges only that Atlas required him to travel, sometimes long distances, from his home to the vicinity of different project sites before his scheduled work shifts, that he stayed overnight during his scheduled eight-day shifts, that he generally traveled home on the day after his eighth shift, and that "refusal to engage in such travel would result in termination." App. 22-23 ¶¶ 13, 14, 16, 17.

11

These facts describe little more than a basic commute; all employees must arrive at their jobs before their shift begins and refusal to do so understandably leads to termination. Espinoza did not allege that he performed any work for the company during his travel time nor any other facts showing that his travel was part of the duties of his employment.[7] Because Espinoza failed to allege facts showing that the travel was part of his employment duties, he did not plead "sufficient factual matter . . . to state a claim for relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted), under the PMWA.

III

For the forgoing reasons, we will affirm the order of the District Court dismissing Espinoza's amended complaint.

---

[7] Facts that may shed light on whether travel is part of the employee's duties may include, among other things, whether the employee is reimbursed for the travel expenses, whether the employer pays his overnight expenses, whether his hourly wage compensates for the additional effort to get to the work site, whether the work site is in a fixed location, whether the employee performs any tasks to benefit the employer during the travel besides simply traveling to and from the work site, such as reviewing materials needed to commence/complete his duties for the shift, whether there is an employment agreement or description of the position that includes travel to the work site as part of the duties, and whether the travel is ancillary to or a precursor to commencing or concluding work.

*Espinoza v. Atlas R.R. Constr., LLC,*

No. 16-1413

_____

ROTH, <u>Circuit Judge</u>, dissenting:

The majority today imposes a new limit on claims under the PMWA, holding as a matter of law that Rafael Espinoza's travel time is not compensable because it did not involve "more than simply driving to or from a work site."[1]  Because I cannot agree with this narrow view of "duty" under the PMWA in light of the breadth of the term, the statute's policy objectives, and the approach of the analogous provisions of the FLSA, and because I believe that Espinoza's travel took place during "normal working hours" as defined in the PMWA, I respectfully dissent.

I.

The parties here agree to nearly all the material facts.  As Espinoza alleged in his complaint, he was assigned to various project sites located hundreds of miles away from his Pennsylvania residence.  Such scheduling required him to stay in hotels, motels, or other temporary housing because the project locations made it impossible for him to commute on a daily basis.  The parties agree that Atlas paid for these temporary housing facilities.[2]  Atlas generally expected Espinoza to arrive at the hotel, motel, or other temporary housing unit near the assigned project site on the evening before the first 10.5-

_____

[1] Maj. Op. at 9.
[2] *See* Oral Arg. Recording at 28:22-29:05, http://www2.ca3.uscourts.gov/oralargument/audio/16-1413Espinozav.AtlasRailroad.mp3 (acknowledging that Atlas paid for the housing facilities).

1

hour shift.  As a result, Espinoza was required to engage in at least some travel between 7:00 a.m. and 5:30 p.m.—the hours he would work on the days of his shift—on days when he was not actually scheduled to work.  Espinoza further explained that it was impossible to perform his job without engaging in such travel and that Atlas was strict in its requirement that he travel from his Pennsylvania residence to the project site vicinity.  Espinoza does not allege that he was required to use a vehicle provided by the defendants, drive a route dictated by the defendants, or perform any additional tasks during this travel.  Travel to the work site was mandatory, however; if Espinoza refused to engage in such travel, he would be terminated.

The core questions before us, therefore, are two matters of law:  (1) whether travel alone can constitute a "duty of employment" under the PMWA; and (2) whether "normal working hours" as defined by the PMWA is limited to an employee's scheduled hours.  Importantly, at this stage of litigation, our role is not to conclusively decide that Espinoza did travel during normal working hours, or that his travel was actually a duty of his employment; rather, we must simply determine whether these conclusions are *permissible* as a matter of law.  I believe that the legal definitions of "normal working hours" and "duty of employment" are broad enough to potentially encompass Espinoza's claimed hours in light of the clear text of the PMWA, the underlying policy goals of the Pennsylvania General Assembly, and the analogous provisions of the FLSA.

## II.

Turning to the first question presented—whether travel alone can constitute a duty of employment under the PMWA—I believe the majority errs in finding that the phrase

2

"duty of employment" excludes Espinoza's travel time as a matter of law. Courts have properly recognized that the existence and scope of a "duty" is highly fact-specific, and generally inappropriate for resolution at the dismissal stage.[3] Indeed, the *AMTRAK* case cited by the majority expressly notes that "it is impossible to determine whether this [time spent travelling to and from work sites] is 'part of the duties of the employe[e]' without interpreting the collective bargaining agreement to see exactly what the duties of the employees are," suggesting that travel time is not inherently outside the definition of the term "duty."[4] Given that Atlas paid for the temporary housing facilities at which he stayed and that the work sites were varied and unpredictable—factors which the majority acknowledges "may shed light on whether travel is part of the employee's duties"[5]—I would not say that Espinoza's allegations are insufficient at this stage.

The majority, however, narrows the legal definition of "duty" under the PMWA by asking only "whether the employees were performing work-related tasks, in addition

---

[3] *See, e.g.*, *Carey v. Nat'l Event Servs., Inc.*, No. 14 CV 5006, 2015 WL 667519, at *5 (E.D. Pa. Feb. 13, 2015) (noting that the scope of an employee's duties, for purposes of analyzing whether employee fell within an exemption to the FLSA, is a "fact-specific inquiry"); *Giovanelli v. D. Simmons Gen. Contracting*, No. 09 CV 1082, 2011 WL 2470591, at *2 (D.N.J. June 17, 2011) (stating that "the analysis leading to the [finding] of a duty . . . is both fact specific and principled" (internal quotation marks and citation omitted)); *In re Quintus Corp.*, 397 B.R. 710, 716 (D. Del. 2008) (stating that determining the existence and scope of a duty "requires a fact-specific determination by the [c]ourt"); *U.S. Claims, Inc. v. Flomenhaft*, 519 F. Supp. 2d 532, 540-41 (E.D. Pa. 2007) ("[T]he existence of a . . . duty is a fact-specific inquiry generally ill-suited for dismissal at the Rule 12(b)(6) stage.").
[4] *Penn. Federation of the Bhd. of Maintenance of Way Empls. v. Nat'l R.R. Passenger Corp.* (*AMTRAK*), 989 F.2d 112, 115 (3d Cir. 1993) (second alteration in original).
[5] Maj. Op. at 11 n.7. The majority explicitly states that "whether the employer pays his overnight expenses" and "whether the work site is in a fixed location" are relevant considerations in finding a duty. *Id.*

to travel, during their travel time."[6]  Even if I were to share the majority's desire to create

a legal rule about duty, I would disagree with the majority's limitation, as it simply has

no basis in the text of the PMWA or its interpretive case law.  Indeed, statutory

interpretation would suggest "duty" actually encompasses Espinoza's travel time.

When interpreting a statute, we begin with the plain meaning of the text.[7]  Here,

the plain meaning of the word "duty" is broad and does not suggest any limitation that

excludes travel.  Black's Law Dictionary defines a "duty" as "[a] legal obligation that is

owed or due to another and that needs to be satisfied."[8]  An obligation "may refer to

*anything that a person is bound to do* or forbear from doing . . .."[9]  These definitions

make clear that duty is an expansive term in and of itself, which can encompass a broad

range of activities.  Its breadth is further evidenced by the fact that Black's goes on to

provide a nonexhaustive list of twenty-four examples of specific types and sources of

duties.[10]  Thus, to the extent the phrase "duty of employment" has a plain meaning, it is

broad.  At the very least, the phrase is sufficiently ambiguous that it provides no basis for

imposing the majority's new limitation.

Based on my conclusion that the definition of "duty" is ambiguous, I would

interpret the proper meaning of the phrase here by looking to the FLSA regulation to

determine whether Espinoza's claimed hours are compensable as a matter of law.  When

interpreting ambiguous language in a statute, we employ a canon of statutory

---

[6] Maj. Op. at 10.

[7] *United States v. Geiser*, 527 F.3d 288, 294 (3d Cir. 2008).

[8] BLACK'S LAW DICTIONARY 580 (9th ed. 2009).

[9] *Id* at 1179 (emphasis added).

[10] *Id.* at 580-81.

construction which interprets the same language used in analogous laws as possessing similar meanings.[11] Invoking this *in pari materia* principle, courts have used the FLSA in interpreting the PMWA, noting that "it is proper to give deference to federal interpretation of a federal statute when the state statute substantially parallels it."[12] Courts have found provisions of the PMWA to "substantially parallel" the FLSA even where the language is not identical, so long as the essential ideas and terms of art are the same.[13] Thus, absent clear textual differences, the PMWA should be read coextensively with the FLSA "when they relate to the same persons or things or to the same class of persons or things [because they] must be construed together if possible."[14]

Here, it is clear that the PMWA and the FLSA both seek to protect hourly employees from abusive labor practices. Thus, the statutes relate to the same class of

---

[11] This interpretive canon has been codified by the Pennsylvania legislature. 1 Pa. C.S.A. § 1932. Courts have applied the canon with equal force to regulations. *See, e.g.*, *Highway News, Inc. v. Pa. Dep't of Transp.*, 789 A.2d 802, 808 (Pa. Commw. Ct. 2002) ("[I]t is well settled that the rules of statutory construction apply to regulations as well as to statutes.").

[12] *Baum v. Astrazeneca LP*, 372 F. App'x 246, 248 n.4 (3d Cir. 2010) (quoting *Commonwealth of Pa. Dep't of Labor & Indus., Bureau of Labor Law Compliance v. Stuber*, 822 A.2d 870, 873 (Pa. Commw. Ct. 2003), *aff'd*, 859 A.2d 1253 (2004)).

[13] *See, e.g.*, *id.* at 248-49 (interpreting the administrative exemption of the PMWA using FLSA implementing regulations); *Mazzarella v. Fast Rig Support, LLC*, No. 13 CV 2844, 2014 WL 2861027, at *3-*4 (M.D. Pa. June 23, 2014) (treating motor carrier exemption under PMWA as coextensive with federal motor carrier exemption despite different language); *Vansatory-Frazier v. CHHS Hosp. Co., LLC*, No. 08 CV 3910, 2010 WL 22770, at *9 (E.D. Pa. Jan 4, 2010) (noting that although many of "the[] exemptions under the PMWA are not identical to FLSA's criteria, . . . the tests are sufficiently similar that the court's analysis regarding the FLSA exemptions also applies to the PMWA exemptions").

[14] *Masterson v. Fed. Exp. Corp.*, No. 07 CV 2241, 2008 WL 5189342, at *3 (M.D. Pa. Dec. 10, 2008) (citing 1 Pa. C.S.A. § 1932) (using this aspect of Pennsylvania's interpretive statute to find the FLSA and the PMWA coextensive).

persons and seek to accomplish the same ends; they should be interpreted separately only if there are clear textual differences between the two statutes that would indicate materially different meanings to them.

The majority reads the "duty of employment" language in the PMWA regulation as imposing an additional limitation in the PMWA that is not present in the FLSA. I disagree. First, as the majority notes, the FLSA regulation states that when an employee is required to travel during normal working hours, "[t]he employee is simply substituting travel for *other* duties" of employment.[15] The modifier "other," when placed before "duties," suggests that the FLSA regulation contemplates travel away from one's home community as compensable only when it is itself a duty of employment.

Treating the FLSA as lacking a "duty" requirement would lead to ludicrous results. The majority reads the FLSA to state that travel "becomes a compensable employment duty merely by occurring during regular working hours," which it suggests is a material difference from the PMWA provision. Yet this reading of the FLSA as lacking an independent duty inquiry would make travel *for any purpose whatsoever* during normal working hours compensable. Because such a literal reading of the FLSA regulation would expose employers to extraordinary liability, district courts in this Circuit have agreed with parties who argued that the regulation "only applies to employees required to travel *for work* away from their home overnight."[16] Thus, although the

---

[15] 29 C.F.R. § 785.39 (emphasis added).

[16] *Mundell v. DBA/DMC Mining Servs. Corp., et al.,* No. 12 CV 2614, 2013 WL 5674558, at *11 (M.D. Pa. Aug. 23, 2013) (emphasis added), *report and recommendation adopted in part*, 2013 WL 5675575 (M.D. Pa. Oct. 17, 2013).

specific phrase "as part of the duties of the employee" is missing from the FLSA regulation, it is clear that such a limitation does exist. Accordingly, I would find that the PMWA regulation substantially parallels the FLSA, and use the analogous FLSA regulation in interpreting the PMWA.

The FLSA regulation does not require an employee to perform any additional tasks during the course of their travel in order for the time to be compensable. Accordingly, the FLSA provides no basis for imposing a *legal* bar to recovery on Espinoza's travel time. The parties agree that Espinoza's travel would be a compensable duty under the FLSA regulation as "travel away from the home community," and I would read the PMWA to provide at least as much protection.

Finally, even assuming that the majority is correct that "duty" has the narrow plain meaning which the majority seems to employ, that alone would not resolve this matter. We have noted that even the plain meaning of statutory language is not conclusive "when 'the literal application of a statute will produce a result demonstrably at odds with the intentions of the drafters.'"[17] The PMWA was enacted to prevent employers from paying their employees in ways "not fairly commensurate with the value of the services rendered."[18] The Pennsylvania legislature was expressly cognizant of the fact that employees "are not as a class on a level of equality in bargaining with their employers" with respect to their wages.[19] Pennsylvania law makes clear that, save narrowly defined

---

[17] *Byrd v. Shannon*, 715 F.3d 117, 123 (3d Cir. 2013) (quoting *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242 (1989)).
[18] 43 P.S. § 333.101.
[19] *Id.*

exceptions, statutes "shall be liberally construed to effect their objects and to promote justice."[20] Particularly in the context of labor statutes, terms "must be interpreted . . . by taking into account such considerations as the necessity for and the circumstances surrounding the enactment of the statute, the evil which it sought to remedy and the object which was to be attained."[21]

Under a narrow conception of "duty," an employer could require an employee to engage in some nontrivial actions—such as driving up to 10 hours at a time—and simply define such actions as "ancillary" to the employee's main duties to avoid the requirement of compensation. Particularly in the case of workers who cannot engage in any aspect of their employment without being on a work site, and whose work sites are variable and unpredictable, I would not say that travel alone cannot, as a matter of law, be considered a "duty" of employment.

In support of its holding to the contrary, the majority relies almost entirely on the nonprecedential dissenting opinion of two justices of the Pennsylvania Supreme Court in the case of *Caiarelli v. Sears, Roebuck & Co*., which involved service repair technicians who sought compensation for time spent traveling to various sites to perform maintenance and repair services for the defendant's customers. The trial court granted summary judgment in favor of the defendant, and the Pennsylvania Superior Court affirmed in an unpublished opinion. The Pennsylvania Supreme Court granted the employees' petition for appeal, but subsequently dismissed the appeal as improvidently

---

[20] 1 Pa. C.S.A. § 1928(c).
[21] *Kulzer Roofing, Inc. v. Commonwealth of Pa., Dep't of Labor & Indus.*, 450 A.2d 259, 260-61 (Pa. Commw. Ct. 1982).

8

granted, with two justices dissenting. The majority reads the dissent in *Caiarelli* to stand for the idea that travel alone—without the performance of some additional work—cannot constitute a "duty" of employment as a matter of law. I disagree for three reasons. First, Atlas and the majority overstate the *Caiarelli* dissent's claims; rather than stating a broad rule about the compensability of commuting time, the dissent merely criticizes the Superior Court's mischaracterization of the claimed hours as commuting time. The dissent goes only so far as to hold that the performance of additional duties during travel is sufficient to make such travel compensable; never does it suggest that the performance of additional duties is *required*. Contrary to the majority's reading, the dissent dedicates no discussion to the question of when travel alone *may* constitute a duty under the PMWA.

Second, the *Caiarelli* case was resolved at a motion for summary judgment, *after* the parties had engaged in full factual discovery to determine the exact scope of the employees' "duties" of employment. This critical procedural distinction from the case at bar cannot be ignored, given the fact-specific nature of "duty." To the extent that the *Caiarelli* dissenters made any statement about whether the employees' travel was a duty of employment, it was necessarily limited to that particular employment relationship, which was explored through discovery.

Third, regardless of the dissent's breadth, its persuasiveness is marginal at best; it remains merely the dissenting view of two justices in an appeal from an unpublished Superior Court order which the Pennsylvania Supreme Court ultimately dismissed as

9

improvidently granted. The dissent alone cannot tell us how the full bench of the Pennsylvania Supreme Court might answer the question.

In light of the scope of the term "duty" and the broadly remedial policies underlying the PMWA, the question of whether Espinoza's travel was a compensable "duty" requires a fact-specific analysis of the exact context of his employment, rendering it an inappropriate basis for dismissal at the pleading stage. Particularly because Espinoza's pleadings do allege some of the facts that the majority says "may shed light on whether travel is part of the employee's duties," I would hold that Espinoza has alleged sufficient facts to state a plausible claims for relief.

## III.

I would also reverse the District Court's determination that Espinoza's travel did not take place during "normal working hours"—a determination that both parties agreed at argument was in error.[22]

Once again, our analysis of the meaning of a statutory phrase must begin with the text. The District Court's analysis of this question was cursory, and simply stated that "[t]ravel before or after [Espinoza's] eight-day work period necessarily falls outside [Espinoza's] normal working hours."[23] Thus, it appears that the District Court determined that "normal working hours" under the PMWA are coextensive with "scheduled working hours." This determination flies in the face of the PMWA

---

[22] *See* Oral Arg. Recording at 5:30-5:50, 31:05-31:50, http://www2.ca3.uscourts.gov/oralargument/audio/16-1413Espinozav.AtlasRailroad.mp3 (agreeing to the definition of "normal working hours").
[23] App. 9a.

regulation's text; the implementing regulations expressly make use of the phrase "scheduled working hours" to refer to an employee's actual schedule of work in other sections.[24] We cannot simply read the two phrases to have the same meaning without ignoring the agency's conscious decision to use different language in describing compensable hours. In order to fully effect the intent of the agency and legislature, we must assume that "normal working hours" has a meaning distinct from "scheduled working hours."

Since the meaning of the phrase is not clear from the face of the regulation, I would look to the meaning of the phrase as used in the analogous provisions of the FLSA regulations because, as shown above, the regulations "substantially parallel" the PMWA regulation. At various points in the FLSA regulations, "normal working hours" is used in connection with additional limiting language when referring to the hours for which an employee actually works. For example, the FLSA's implementing regulations refer to "[an] employee's normal working hours *on days when he is working*."[25] Because we must read statutes to avoid surplusage, "on days when he is working" must be some limiting qualifier on "normal working hours," suggesting that the phrase must include at least some hours on days where an employee is *not* working. This broader reading of the phrase would also support the PMWA's underlying purposes: limiting the potential for abusive wage practices by employers. A reading of "normal working hours" as identical

---

[24] *See, e.g.*, 34 Pa. Code § 65.22(a)(3)(ii) (stating that an employment offer must include "[t]he scheduled working hours during each day of the week"); 34 Pa. Code § 63.64(a)(7) (requiring employers to keep records of "[a]ll scheduled hours and hours worked").
[25] 29 C.F.R. § 785.43 (emphasis added).

11

to "scheduled working hours" would exacerbate the disparity in bargaining power between employer and employee, as employers exercise sole control over employees' schedules. Taking this reading to its extreme, nothing would stop an employer from "scheduling" an employee to work only a small number of hours, but requiring the employee to complete duties deemed "ancillary" to the job outside of this scheduled shift. This would reduce an employee's shift hours, thereby artificially lowering the employee's compensation. Because such a result would clearly undermine the goals of the PMWA, I believe that the phrase "normal working hours" may include hours outside of an employee's actual scheduled shifts.

## IV.

Because I believe the majority's decision takes an overly narrow view of what may constitute a duty of employment under the PMWA and thereby creates a new legal bar to recovery for employees seeking to vindicate their rights, I respectfully dissent.

12